660 So.2d 685 (1995)
Darryl BARWICK, Appellant,
v.
STATE of Florida, Appellee.
No. 80446.
Supreme Court of Florida.
July 20, 1995.
Rehearing Denied September 19, 1995.
*688 Nancy A. Daniels, Public Defender, and W.C. McLain, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Richard B. Martell, Chief, Capital Appeals, Tallahassee, for appellee.
PER CURIAM.
Darryl Barwick appeals his convictions for first-degree murder, armed burglary, attempted sexual battery, and armed robbery, and his respective sentences including his sentence of death. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution, and we affirm both the convictions and sentences.
On the morning of March 31, 1986, Michael Ann Wendt left her apartment in Panama City to travel to Fort Walton Beach. Rebecca Wendt, Michael Ann's sister and roommate, remained at the apartment complex and lay outside sunbathing until approximately 11:45 a.m. Another resident of the complex who was also outside sunbathing observed a man walking around the complex at about 12:30 p.m. The witness indicated *689 that she saw the man walk toward the Wendts' apartment and later walk from the Wendts' apartment into the woods. She subsequently identified that man as Darryl Barwick.
On the evening of March 31, Michael Ann returned to the apartment and found Rebecca's body in the bathroom wrapped in a comforter.[1] Investigators called to the scene observed bloody footprints at various places throughout the apartment and bloody fingerprints on the victim's purse and wallet. Rebecca's bathing suit had been displaced, and she had been stabbed numerous times. An autopsy revealed that she sustained thirty-seven stab wounds on her upper body as well as a number of defensive wounds on her hands. The medical examiner concluded that the potentially life-threatening wounds were those to the neck, chest, and abdomen and that death would have occurred within three to ten minutes of the first stab wound. The examiner found no evidence of sexual contact with the victim, but a crime laboratory analyst found a semen stain on the comforter wrapped around the victim's body. After conducting tests on the semen and Barwick's blood, the analyst determined that Barwick was within two percent of the population who could have left the stain.
When initially questioned by investigators, Barwick denied any involvement in Rebecca's murder. However, following his arrest on April 15, 1986, he confessed to committing the crime. He said that after observing Rebecca sunbathing, he returned to his home, parked his car, got a knife from his house, and walked back to the apartment complex where he had previously observed Rebecca. After walking past her three times, he followed her into her apartment. Barwick claimed he only intended to steal something, but when Rebecca resisted, he lost control and stabbed her. According to Barwick, he continued to stab Rebecca as the two struggled and fell to the floor.
Barwick was indicted for first-degree murder, armed burglary, attempted sexual battery, and armed robbery. He was found guilty as charged and sentenced to death. On appeal, this Court found a violation of State v. Neil, 457 So.2d 481 (Fla. 1984), reversed Barwick's convictions, and remanded for a new trial. Barwick v. State, 547 So.2d 612 (Fla. 1989).
A new attorney was appointed to represent Barwick. The retrial was assigned to Judge Clinton E. Foster, after Judge W. Fred Turner, the judge initially assigned to the case, retired and a second judge assigned to the case recused himself. Barwick moved to disqualify Judge Foster claiming that the judge's conduct and statements indicated he had prejudged psychological issues critical to the defense and that the judge's concern for county finances had hindered Barwick in preparing his defense. Judge Foster denied the motion as well as a subsequent motion to disqualify.
Counsel for Barwick was again substituted on February 5, 1992. Barwick proceeded to trial on June 22, 1992, but shortly thereafter, a mistrial was declared. A new trial commenced on July 6, 1992. At the conclusion of this trial, the jury found Barwick guilty as charged and unanimously recommended a sentence of death. Judge Foster followed the jury's recommendation, sentencing Barwick to death for murder in the first degree. He also sentenced Barwick to life for armed burglary with a battery, thirty years for attempted sexual battery, and life for armed robbery.
In support of the death sentence, Judge Foster found six aggravators: (1) previous convictions for the violent felonies of sexual battery with force likely to cause death or great bodily harm and burglary of a dwelling with an assault;[2] (2) the murder was committed during an attempted sexual battery;[3] (3) the murder was committed to avoid arrest;[4] (4) the murder was committed for pecuniary gain;[5] (5) the murder was especially *690 heinous, atrocious, or cruel;[6] and (6) the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral justification.[7] In its sentencing order, the court set out the statutory mitigating circumstances proposed by the defense but found that each potential mitigator was either not established by the evidence or was not a significant mitigating circumstance. With regard to nonstatutory mitigating circumstances, the court recognized that Barwick suffered abuse as a child and considered expert testimony indicating that Barwick had some mental deficiencies, but determined that these were not mitigating circumstances in this case.
Barwick raises five issues relating to the guilt phase of his trial[8] and nine issues relating to the penalty phase.[9] We find that only six of these issues merit full discussion.[10]
We first address Barwick's claim that his initial motion to disqualify was legally sufficient and, thus, should have been granted. On June 5, 1991, Judge Foster held a hearing on Barwick's motion. After reviewing the allegations as well as the affidavit of Barwick's attorney filed in support of the motion, Judge Foster determined that the motion was not legally sufficient to form a basis for disqualification and, thus, entered an order denying it on June 6, 1991.
On June 11, 1991, while a second motion for disqualification filed by Barwick was pending, Barwick filed a petition for writ of prohibition asking this Court to prevent Judge Foster from hearing his case. We denied the petition on June 14, 1991, without requesting a response. The State contends that this denial of Barwick's petition should be read as a merits ruling on Barwick's claim *691 that the trial court erred in denying his initial motion to disqualify. In support of its position, the State relies on Obanion v. State, 496 So.2d 977 (Fla. 3d DCA 1986), review denied, 504 So.2d 768 (Fla. 1987), and Justice Anstead's concurring opinion in DeGennaro v. Janie Dean Chevrolet, Inc., 600 So.2d 44 (Fla. 4th DCA 1992), which recognize that a denial of a petition for writ of prohibition in those districts should henceforth constitute a ruling on the merits unless otherwise indicated. Prior to these decisions, the Fourth and Third Districts, like other districts, agreed that a denial of a writ of prohibition without an opinion would not serve as the "law of the case" unless it was affirmatively established that the denial was on the merits or a merits determination was the sole possible grounds for denial. See Cappetta v. State, 471 So.2d 1290 (Fla. 3d DCA), review denied, 480 So.2d 1296 (Fla. 1985); Fyman v. State, 450 So.2d 1250 (Fla. 2d DCA 1984); Thomas v. State, 422 So.2d 93 (Fla. 2d DCA 1982); Public Employees Relations Comm'n v. District School Bd. of DeSoto County, 374 So.2d 1005 (Fla. 2d DCA 1979), cert. denied, 383 So.2d 1193 (Fla. 1980).
We approve of the procedure adopted by the Third District in Obanion and advocated by Justice Anstead's concurring opinion in DeGennaro as to the effect of the denial of a petition for writ of prohibition in those district courts, but we do not agree that our denial of the prohibition petition in this particular case was a decision on the merits. The order issued by this Court did not indicate on what grounds the petition was denied. Nor has this Court clearly expressed an intention to have a denial of a petition for writ of prohibition, without more, serve as a ruling on the merits. In light of the differing approaches taken by the district courts, however, we recognize a need to clarify the effect of this Court's denial of a prohibition petition. We hold that from this time forward, if an order from this Court denying a petition for a writ of prohibition based upon an unsuccessful motion for disqualification is to constitute a decision on the merits and, thereby, foreclose further review of the disqualification issue on direct appeal, the order will state that it is "with prejudice."
Because we find that review of Barwick's motion is not foreclosed by our order denying a petition for writ of prohibition, we next consider the merits of Barwick's claim that the trial judge's denial of the motion to disqualify was error. We reject this claim because we agree that the motion was not legally sufficient. A motion is legally sufficient if it shows that the party making the motion has a well-grounded fear that he or she will not receive a fair trial from the presiding judge. Dragovich v. State, 492 So.2d 350, 352 (Fla. 1986); Tafero v. State, 403 So.2d 355, 361 (Fla. 1981), cert. denied, 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 694 (1982); State ex rel. Brown v. Dewell, 131 Fla. 566, 573, 179 So. 695, 697 (1938). In his brief, Barwick summarized the allegations raised in his June 5, 1991, motion for disqualification as follows:
1. Judge Foster, on his own motion, rescinded previously entered orders granting the defense an investigator and mental health experts to aid in the preparation of a defense.
2. Judge Foster denied interim attorney's fees, when such fees had been previously awarded and relied upon by defense counsel who was a sole practitioner.
3. Judge Foster questioned the need for further defense preparation and whether further work by defense experts would be paid for at county expense.
4. Judge Foster summarily denied a defense motion for appointment of a psychiatrist without a hearing and without legal memorandums and after an ex parte communication with the prosecutor.
5. Judge Foster said that Dr. Blau, the defense psychologist, like other psychologists, would say anything the party who hired him wanted him to say.
Initial Brief of Appellant at 42.[11]
As to the first and third grounds upon which the motion was based, Judge Foster *692 acknowledged at the hearing on the motion, as well as in his subsequent order, that he had rescinded some appointments for defense assistance. He noted, however, that the transcript from the hearing in which those appointments were rescinded also indicated that at the same time he rescinded those orders, he asked that the requests for assistance be resubmitted with more detailed guidelines as to cost. At the time of the hearing on the motion for disqualification no requests had been resubmitted to Judge Foster. With respect to the second ground upon which Barwick's motion was based, Judge Foster noted in his order that the approval of interim fees was not a prevailing practice in that circuit and that the decision to award interim fees was within the trial court's discretion.
Despite Barwick's assertion otherwise, we find that the primary basis for these first three grounds for disqualification was Barwick's disagreement with the trial judge's rulings. The fact that a trial judge makes an adverse ruling is not a sufficient basis for establishing prejudice. Jackson v. State, 599 So.2d 103, 107 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 612, 121 L.Ed.2d 546 (1992); Gilliam v. State, 582 So.2d 610, 611 (Fla. 1991); Tafero, 403 So.2d at 361. Accordingly, we conclude that these allegations, taken as true, could not have reasonably established in Barwick a fear that he would not receive a fair trial.
Barwick's fourth allegation in support of disqualification pertained to a defense motion for appointment of a psychiatrist originally argued to the trial court on March 19, 1991. The State requested that it be permitted to respond by memorandum to Barwick's motion for appointment. That request was granted, and Barwick was then given leave to file a response to the State's memorandum. The State, however, failed to file a memorandum. The motion was again argued on both April 2 and April 19, with the State again requesting and receiving leave to file a memorandum at each hearing. Still, the memorandum was never filed. The motion for disqualification further avers:
The undersigned has been told by a person who was present in the courtroom that on May 14, 1991, Judge Foster and the assistant state attorney had a colloquy in the courtroom but in the absence of defense counsel and of the defendant, in which the assistant state attorney requested that the court hold a hearing on the issue of the defense motion for psychiatrist. The Court instead entered an order summarily denying the motion.
Though it is apparent from this allegation that the trial court entered its order denying the motion for appointment of the psychiatrist without either the State or the defendant filing the memorandum which the trial judge granted each party leave to file, the issue which inherently arises from the court's summary denial of the motion is whether the ruling itself was error. The summary denial does not raise the question of whether the trial judge should be disqualified for entering the order.
By summarizing this allegation in his brief, Barwick has essentially converted it into an allegation that the denial of the appointment of the psychiatrist occurred "after an ex parte communication with the prosecution." However, the allegation as set forth in the motion simply does not support an inference that there was an ex parte communication between the trial judge and the assistant state attorney as to anything other than a request by the assistant state attorney for another hearing on the motion. While we recently cautioned, and again caution here, that a judge is not to have any substantive communication with counsel for any party, including counsel for the State, unless such communication is expressly authorized by statute or rule,[12] we find that the conclusory allegation in Barwick's motion for disqualification was not sufficient to allege that such an ex parte communication occurred. Nor did the allegation establish that any ex parte communication that might have occurred was a legally sufficient basis for granting the motion for disqualification.
*693 In respect to ground five of Barwick's motion for disqualification, the motion explicitly states:
Counsel has recently been told that Judge Foster once made reference specifically to Dr. Blau, the defense psychologist in this case, saying in substance that the doctor  like other psychologists  would say anything that the party that hired him wished him to say. It is believed that Dr. Blau has never testified before Judge Foster and that Judge Foster has never met Dr. Blau.
We also conclude that this particular allegation was not legally sufficient. A legally sufficient motion for disqualification cannot be based upon rumors or gossip about what the trial judge allegedly said to unidentified people, at unidentified times, and under unidentified circumstances. The situation in this case is distinguishable from Suarez v. Dugger, 527 So.2d 190 (Fla. 1988), in which the trial judge made statements demonstrating his interest in the speedy execution of a defendant whom he had sentenced to death and whose 3.850 motion he had not yet considered. Unlike the statement allegedly made by Judge Foster, the timing and contents of the judge's statements in Suarez were adequately identified. Id. at 192. The trial judge in Suarez also acknowledged that the statements were properly attributed to him in a newspaper article. Id. at 192 n. 1. Because we find that Barwick's motion for disqualification was not legally sufficient, we reject Barwick's claim that the trial court's denial of this motion provides a basis for reversal.
On the same day the written order denying the first motion to disqualify was entered, Judge Foster arranged a telephone conference to address his concern over the fact that one of Barwick's prior attorneys, who had withdrawn due to conflict, assisted in drafting the original motion for disqualification. Defense counsel responded that the involvement was minimal and that he would ask Barwick, at the court's behest, whether he thought a hearing on the matter was necessary. The following day, Barwick filed a renewed motion to disqualify Judge Foster alleging the original grounds stated in his first motion as well as several additional grounds. Specifically, Barwick alleged as additional grounds that Judge Foster engaged in ex parte communications with an unidentified source in order to obtain the information that led him to call the June 6 telephone conference, that the telephone conference was basically an attempt to drive the present attorney from the case, and that Judge Foster improperly disputed the factual accuracy of several allegations in the hearing on the original motion to disqualify. After a hearing on the second motion, Judge Foster denied it.
Barwick alleges that his second motion to disqualify was also legally sufficient and constitutes grounds upon which his conviction and sentence should be reversed. The primary focus of the renewed motion was that the alleged hostility between Judge Foster and defense counsel required the judge's disqualification. A judge may be disqualified due to prejudice toward an attorney where the prejudice is of such degree that it adversely affects the client. Livingston v. State, 441 So.2d 1083 (Fla. 1983); State ex rel. Fuente v. Himes, 160 Fla. 757, 36 So.2d 433 (1948). However, the record in this case reflects that Barwick's defense counsel was in a serious automobile accident five months prior to trial. Due to the injuries defense counsel sustained in the accident, he withdrew from the case. We find that the defense attorney's withdrawal and his replacement five months prior to the trial eliminated any possibility that the alleged hostility between Judge Foster and defense counsel would have adversely affected Barwick.
In his second motion for disqualification Barwick also alleged that Judge Foster improperly disputed the allegations made in the original motion to disqualify. In the order denying the original motion, Judge Foster attached a copy of and explained the contents of a transcript of the April 2, 1991 hearing in which he rescinded Judge Turner's orders granting the appointment of certain defense experts. He did so in order to verify that he had asked Barwick to resubmit, with limitations as to cost, requests for defense experts. The order expressly states that "[w]hile this Court is not permitted to *694 inquire into the truth of proper factual allegations in support of a motion to disqualify, by the same token the Court can not [sic] ignore its own record." Although the judge made statements about the contents of Barwick's motion during the hearing and referred to the transcript of a prior hearing in its order, we do not find that the trial judge stepped beyond the bounds we established in Bundy v. Rudd, 366 So.2d 440 (Fla. 1978), and recently affirmed in Rogers v. State, 630 So.2d 513 (Fla. 1993). Specifically, we do not construe Judge Foster's references to the transcript of the April 2 hearing as anything more than a reference to how the court initially dealt with matters that were raised in the motion for disqualification. We conclude, as the court did in Kowalski v. Boyles, 557 So.2d 885 (Fla. 5th DCA 1990), that a trial judge is permitted to explain the status of the record.
Next, we examine Barwick's claim that the trial court should have granted his motions for mistrial because the prosecutor made comments that shifted the burden of proof to the defendant and referred to the defendant's silence. We find that in making the first comment which Barwick challenges, the prosecutor merely informed the jury that at the conclusion of the evidence, the State would advise that conviction was appropriate. During opening argument the prosecutor stated: "At the conclusion of all the evidence, the defense evidence, as well as mine, I'm going to ask you to find... ." We do not believe this statement had the effect of telling the jury that Barwick bore the burden of presenting evidence. Furthermore, the jury was expressly instructed that the State bore the burden of proving defendant's guilt.
Likewise, we do not agree that the second statement which Barwick challenges was fairly susceptible of being interpreted as a comment on Barwick's silence. See Jackson v. State, 522 So.2d 802, 807 (Fla.) (setting forth fairly susceptible test), cert. denied, 488 U.S. 871, 109 S.Ct. 183, 102 L.Ed.2d 153 (1988). During closing argument, the prosecutor stated: "But what, what in this courtroom, what evidence, what fact, what testimony, what anything have you heard as a result of him going down to that police station would create a reasonable doubt in your mind what he has done, what he is guilty of. Nothing." An examination of the context in which this comment arose leads us to the conclusion that the statement did not draw the jury's attention to Barwick's failure to testify but merely directed the jury to consider the evidence presented. See Dufour v. State, 495 So.2d 154, 160 (Fla. 1986), cert. denied, 479 U.S. 1101, 107 S.Ct. 1332, 94 L.Ed.2d 183 (1987); White v. State, 377 So.2d 1149, 1150 (Fla. 1979). In closing, defense counsel argued that the jury should consider the fact that although several officers were present at the time Barwick's statement was taken, only one testified as to the conditions under which the statement was made. In response to the defense's attempt to create reasonable doubt in the mind of the jurors by asserting that the State was hiding something as to the circumstances under which Barwick made his taped confession, the State responded that there was no evidence supporting the conclusion that any impropriety occurred. The defense invited, and the State was thus entitled to make this response. See State v. Mathis, 278 So.2d 280, 281 (Fla. 1973).
We next address Barwick's claim that the trial court erred in denying his motion for judgment of acquittal on the attempted sexual battery charge. In a circumstantial evidence case such as this, a judgment of acquittal is appropriate if the State fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt. Atwater v. State, 626 So.2d 1325, 1328 (Fla. 1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994); State v. Law, 559 So.2d 187, 188 (Fla. 1989). If a case is to proceed to trial where the jury can determine whether the evidence presented is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt, the trial judge must first determine there is competent evidence from which the jury could infer guilt to the exclusion of all other inferences. Law, 559 So.2d at 189. If there is an absence of such evidence, a judgment of acquittal is appropriate.
*695 To meet its threshold burden, the State must introduce competent evidence which is inconsistent with the defendant's theory of events. Id. At trial, Barwick claimed that he did not intend to rape Rebecca when he entered her apartment, but that he only intended to steal something. According to Barwick, when Rebecca resisted, a struggle ensued. Barwick contends that the evidence on which the State relies is not inconsistent with this theory of events.
However, the State need not conclusively rebut every possible variation of events which could be inferred from Barwick's hypothesis of innocence. Id.; State v. Allen, 335 So.2d 823, 826 (Fla. 1976). Whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to decide. Lincoln v. State, 459 So.2d 1030, 1032 (Fla. 1984). We have held that "[i]f there is room for a difference of opinion between reasonable people as to the proof or facts from which an ultimate fact is to be established, or where there is room for such differences on the inferences to be drawn from conceded facts, the court should submit the case to the jury." Taylor v. State, 583 So.2d 323, 328 (Fla. 1991).
Here, Barwick admitted that he had observed Rebecca sunbathing on his way home and subsequently returned with a knife to the apartment complex where he initially observed her. He also admits to passing by Rebecca several times and entering her apartment only after Rebecca herself had entered. Additionally, the State presented evidence showing that at the time the victim was found, the top portion of her bathing suit had been pulled up and the bottom portion had been pulled down in the back. Tests of the semen stain on the comforter found wrapped around the victim's body revealed that Barwick was within two percent of the population that could have left the stain. We find that this evidence, considered in combination and in the light most favorable to the State,[13] is inconsistent with Barwick's theory that he entered the Wendts' apartment merely to steal something. Given the inconsistency, a jury could have reasonably rejected Barwick's testimony denying that he attempted to rape Rebecca. Peterka v. State, 640 So.2d 59 (Fla. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 940, 130 L.Ed.2d 884 (1995); DeAngelo v. State, 616 So.2d 440, 442 (Fla. 1993); Williams v. State, 437 So.2d 133, 135 (Fla. 1983), cert. denied, 466 U.S. 909, 104 S.Ct. 1690, 80 L.Ed.2d 164 (1984); Drake v. State, 476 So.2d 210, 215 (Fla. 2d DCA 1985).
We therefore conclude that this was a question for the trier of fact to resolve, and we will not disturb the jury's verdict finding Barwick guilty of attempted sexual battery in light of the competent, substantial evidence supporting that verdict. See Law, 559 So.2d at 188.[14] Although Barwick does not challenge the sufficiency of the evidence supporting his remaining convictions, our review of the record reveals competent, substantial evidence supporting those convictions as well. Accordingly, we affirm Barwick's convictions, including his conviction for first-degree murder, and we move on to address Barwick's remaining penalty-phase claims.
Barwick claims that the court erred in its findings regarding several mitigating and aggravating circumstances. First, he claims that the court erred in rejecting child abuse as a nonstatutory mitigator. With respect to this mitigator, the trial judge found:
The evidence establishes that the defendant was abused as a child by his father and grew up in a dysfunctional family. The evidence also established that the defendant's siblings were likewise abused and they apparently grew up to be responsible persons. Two of the siblings had the unfortunate experience of being compelled to testify against their brother. While *696 there are doubtless numerous cases where the abuse received by children influence their actions in adult life and result in or contribute to criminal behavior. [sic] The Court does not find in this case that the abuse received by the defendant as a child is a mitigating circumstance.
We have held that a trial court must find as a mitigator each proposed factor that is mitigating in nature and has been reasonably established by the greater weight of the evidence. Campbell v. State, 571 So.2d 415, 419 (Fla. 1990). We have also expressly recognized an abused or deprived childhood as one factor that is mitigating in nature. Id. at 419 n. 4. In addition, the judge here recognized that the evidence established that Barwick was abused as a child. Consequently, this abuse was an appropriate mitigating circumstance for the court to consider.
Although the trial judge stated that he did not consider Barwick's history of child abuse a mitigating factor, we find that the sentencing order indicates that the judge properly considered evidence of abuse in imposing the death sentence. The sentencing order provides:
The Court has considered and weighed each of the applicable aggravating circumstances and each of the statutory and nonstatutory mitigating circumstances that are established by the evidence or on which there has been any significant evidence produced as they relate to the murder charge.
This statement indicates that the trial judge weighed the factor as ultimately required by our decision in Campbell. We therefore conclude that the trial judge sufficiently considered the mitigating evidence presented on this factor. Any error in articulating the particular mitigating circumstance was harmless. See Armstrong v. State, 642 So.2d 730 (Fla. 1994).
With regard to Barwick's challenges to the aggravators found by the trial judge, we conclude that the court properly found that the murder was heinous, atrocious, or cruel. Rebecca Wendt was stabbed thirty-seven times and suffered numerous defensive wounds. This Court has consistently upheld the finding of this aggravator where the victim was repeatedly stabbed. Atwater, 626 So.2d at 1329; Campbell, 571 So.2d at 418.
Barwick also challenges the trial court's finding that the murder was committed in a cold, calculated, and premeditated manner. With regard to this aggravator, the trial court found:
The defendant in a calculated manner selected his victim and watched for an opportune time. He planned his crimes, selected a knife, gloves for his hands, and a mask for his face so that he could not be identified. When struggling with the victim the mask was pulled from his face, and knowing that he could be identified, he proceeded in a cold, calculated manner, and with premeditation to kill her without any pretense of moral or legal justification. The defendant had planned a sexual battery or burglary or robbery or all three, had armed himself to further those purposes and when a killing became necessary, without any moral or legal justification or remorse, he killed her.
We conclude that the evidence presented does not demonstrate that Barwick had a careful plan or prearranged design to kill the victim. See Rogers v. State, 511 So.2d 526, 533 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). "A plan to kill cannot be inferred solely from a plan to commit or the commission of another felony." Geralds v. State, 601 So.2d 1157, 1163 (Fla. 1992); see also Sochor v. State, 619 So.2d 285, 292 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 638, 126 L.Ed.2d 596 (1993); Power v. State, 605 So.2d 856, 864 (Fla. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1863, 123 L.Ed.2d 483 (1993); Hardwick v. State, 461 So.2d 79, 81 (Fla. 1984), cert. denied, 471 U.S. 1120, 105 S.Ct. 2369, 86 L.Ed.2d 267 (1985). Here, the evidence suggests that Barwick planned to rape, rob, and burglarize rather than kill Rebecca. Because the murder was not committed in a calculated manner, we conclude that the trial court erred in finding the heightened premeditation necessary to establish this aggravator. The cold, calculated, and premeditated aggravator is therefore stricken.
*697 Based on our review of the record, we find that the death sentence was proper, and we therefore reject Barwick's claim that death was a disproportionate sentence in this case. Even after the cold, calculated, and premeditated factor is eliminated, five valid aggravators remain to be weighed against only minimal mitigating evidence. We have held that reversal of a sentence is warranted only if correction of the errors could reasonably result in a different sentence. Rogers, 511 So.2d at 535. Under the circumstances presented in this case, we cannot say that a lesser sentence would have been imposed in the absence of the cold, calculated, and premeditated aggravator. We therefore find that the trial court's error was harmless beyond a reasonable doubt and affirm Barwick's sentence of death. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). Additionally, we affirm Barwick's sentences for armed burglary with a battery, attempted sexual battery, and armed robbery.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING and ANSTEAD, JJ., concur.
WELLS, J., concurs in part and dissents in part with an opinion.
WELLS, Justice, concurring in part and dissenting in part.
I concur with the majority's decision to affirm the conviction and the death penalty, but I do not agree with the majority's decision to strike the cold, calculated, and premeditated aggravating factor. For reasons similar to those expressed in my dissent in Thompson v. State, 647 So.2d 824 (Fla. 1994), I believe that striking this factor is inconsistent with legislative intent regarding the imposition of the death penalty in Florida.
Although the majority concludes that Barwick entered the Wendts' apartment with the intent to commit felonies other than murder, I believe the record demonstrates otherwise. Barwick admitted that he observed Rebecca sunbathing on his way home then returned to her apartment a short time later, after he had acquired a knife and gloves from his own home. I believe Barwick's actions show the degree of calculation needed to establish the heightened premeditation this aggravator requires. See Owen v. State, 596 So.2d 985, 990 (Fla. 1992); Jennings v. State, 453 So.2d 1109, 1115 (Fla. 1984). The fact that other felonies were also contemplated does not alter my conclusion.
NOTES
[1] The comforter had been removed from Michael Ann's bed.
[2] § 921.141(5)(b), Fla. Stat. (1985).
[3] § 921.141(5)(d), Fla. Stat. (1985).
[4] § 921.141(5)(e), Fla. Stat. (1985).
[5] § 921.141(5)(f), Fla. Stat. (1985).
[6] § 921.141(5)(h), Fla. Stat. (1985).
[7] § 921.141(5)(i), Fla. Stat. (1985).
[8] Barwick alleges: (1) the trial court erred in denying his motions to disqualify Judge Foster; (2) the prosecutor improperly used his peremptory challenges to exclude African-Americans from the jury; (3) the trial court erred in denying Barwick's motion for judgment of acquittal on the attempted sexual battery charge; (4) the trial court erred in allowing Tim Cherry, Michael Ann's boyfriend at the time of the murder, to testify as to his blood type; and (5) the trial court erred in denying Barwick's motions for mistrial after the prosecutor, through comments made during his opening and closing statements, improperly commented on Barwick's silence.
[9] Barwick alleges: (1) the trial court erred in finding that the murder was committed during an attempted sexual battery; (2) the trial court erred in finding that the murder was especially heinous, atrocious, or cruel; (3) the trial court erred in finding that the murder was cold, calculated, and premeditated; (4) the trial court erred in rejecting the nonstatutory mitigator of abuse as a child; (5) the death sentence was not proportionate in this case; (6) the trial court inadvertently instructed the jury to consider sympathy for the victim and erroneously instructed the jurors not to consider sympathy for the defendant in evaluating the sentence; (7) the instruction for the heinous, atrocious, or cruel aggravator was unconstitutional; (8) the trial court failed to instruct the jury on the mitigating circumstance of extreme duress; and (9) the trial court erred in denying Barwick's motion to preclude the death penalty based on alleged racial bias.
[10] We dispense with the majority of the remaining claims as follows. We find that Barwick's Neil claim is procedurally barred, as he did not preserve the issue for appeal by renewing his prior Neil objection before the jury was sworn or accepting the jury subject to his prior objection. See Joiner v. State, 618 So.2d 174 (Fla. 1993). Even if Barwick had preserved this issue for appeal, we find that the State offered a race neutral reason for its challenge. Likewise, Barwick's claim regarding the jury's consideration of sympathy for the defendant and victim is procedurally barred, as Barwick did not contemporaneously object to the prosecutor's remarks which he claims constituted error. See Teffeteller v. State, 495 So.2d 744 (Fla. 1986); Steinhorst v. State, 412 So.2d 332, 338 (Fla. 1982). We dismiss the following claims as being without merit: (1) the trial court erred in allowing Tim Cherry to testify as to his blood type; (2) the instruction for the heinous, atrocious, or cruel aggravator was unconstitutional, see Hall v. State, 614 So.2d 473, 478 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 109, 126 L.Ed.2d 74 (1993); (3) the trial court should have instructed the jury on the statutory mitigator of extreme duress or domination by another person as provided for in section 921.141(6)(e), Florida Statutes (1985), see Toole v. State, 479 So.2d 731, 734 (Fla. 1985) (defining duress as denoting external rather than internal provocation); and (4) the trial court erred in denying Barwick's motion to preclude the death penalty because it was sought and imposed on the basis of racial bias, see Foster v. State, 614 So.2d 455, 463-64 (Fla. 1992) (affirming the denial of the motion to preclude the death penalty which Barwick incorporated by reference into his own motion), cert. denied, ___ U.S. ___, 114 S.Ct. 398, 126 L.Ed.2d 346 (1993).
[11] Dr. Blau had recommended that the defense obtain a psychiatrist to evaluate Barwick's mental condition. Barwick claims that Judge Foster's statement about Dr. Blau, in light of his summary denial of the defense motion for a psychiatrist, dictated a conclusion that the judge would reject any mental-health testimony in the case.
[12] See In re Miller, 644 So.2d 75, 78 (Fla. 1994).
[13] When Barwick moved for judgment of acquittal, he admitted the facts in evidence and every conclusion favorable to the State that the jury might fairly and reasonably infer from the evidence. See Taylor, 583 So.2d at 328; Law, 559 So.2d at 189; Spinkellink v. State, 313 So.2d 666, 670 (Fla. 1975), cert. denied, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976).
[14] In affirming the trial court's conviction for attempted sexual battery, we also affirm the trial court's finding of the aggravating circumstance based on that offense.