692 So.2d 966 (1997)
Jeffrey L. EVANS, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
No. 96-194.
District Court of Appeal of Florida, Fifth District.
April 25, 1997.
*967 James B. Gibson, Public Defender, and Kenneth Witts, Assistant Public Defender, Daytona Beach, for Appellant/Cross-Appellee.
Robert A. Butterworth, Attorney General, Tallahassee, and Lori E. Nelson, Assistant Attorney General, Daytona Beach, for Appellee/Cross Appellant.
PETERSON, Chief Judge.
Jeffrey L. Evans appeals his convictions of first degree murder, armed robbery with a deadly weapon and burglary of a dwelling. He alleges that the trial court erred by denying his motion in limine to suppress his statement made upon his arrest that "I knew I was going to get caught" on the grounds that the statement was in reference to an outstanding North Carolina warrant and was not made with reference to the crimes charged in the instant appeal. Additionally, he alleges that the trial court wrongfully denied his motion for acquittal on the grounds of insufficient evidence. The state cross-appeals the trial court's exclusion of evidence that Evans was found with a handcuff key in his shoe.
Evans' conviction for the murder was primarily based upon circumstantial evidence. Harry Morris' body was discovered in his bed by his sisters on January 24, 1994. The body bore multiple stab wounds. The victim's sisters were able to determine that various items were missing including their brother's metallic green truck and his wallet containing telephone calling cards. They testified that Morris had been especially fond of his truck and allowed no one else to drive it. They also testified that a glass jar previously located on a bar, and half full of money, was no longer there. A crime lab analyst testified that an empty glass jar with two fingerprints of Evans was found on the floor of the victim's home. Other prints were also on the jar that matched neither Evans' nor the victim's fingerprints.
One witness, a homeless person, identified Evans as a person who told him on two different occasions that he wanted to steal the victim's truck and sell it in "Carolina." He further told the witness he would have to kill the victim in order to take the truck. The witness did not take Evans' statements seriously until, while in jail, he read about the victim's murder in a newspaper. At trial, he insisted that he did not receive any lenient treatment for the above information.
A neighbor of the victim testified that she had seen Evans at the victim's house several times a week, and that she last saw him there approximately one week prior to the discovery of the victim's body. A former director of a halfway house testified that Evans and another man stopped by the house and picked up Evans' belongings in a "metalic green truck" after Evans was asked to leave the house.
The victim's truck was found across the street from a bus terminal in Atlanta, Georgia. An employee of the bus line operating out of that terminal testified that on January 24, the day the victim's body was discovered, there was a bus that left Atlanta at 7:30 am and arrived in Columbia, South Carolina at 1:15 pm. A Southern Bell employee testified that on the same day two phone calls were made with the victim's calling card from a bus station in Columbia, South Carolina. The calls were made at 2:51 p.m. and 5:00 p.m. to the workplace of Evans' father. Evans' father testified that he could not remember whether or not he received any calls on that day from his son.
A detective with a South Carolina sheriff's office assisted Florida authorities in locating and arresting Evans. The detective arrested him under an outstanding South Carolina warrant. During the arrest, two plain-clothed Volusia County, Florida, deputies stood in front of Evans with their badges displayed. Evans was not introduced to the officers, and the Florida homicide remained unmentioned. As the South Carolina detective was transporting Evans to the sheriff's office, Evans stated, "I knew I was going to get caught." The detective opined that such *968 statement was in reference to the Florida charges. Despite the trial court's acknowledgement that it did not know if anyone could tell exactly what Evans was referring to, i.e., whether Evans was referring to the South Carolina or Florida charge, the trial court still denied the defense's motion in limine.

I. CIRCUMSTANTIAL EVIDENCE
There are several principles of law which govern an appellate court's review of the legal sufficiency of circumstantial evidence in a criminal proceeding. Foremost is the special standard applied in cases where conviction is based on circumstantial evidence. That standard states, "Where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence." McArthur v. State, 351 So.2d 972, 976 (Fla.1977), citing Davis v. State, 90 So.2d 629 (Fla.1956); Mayo v. State, 71 So.2d 899 (Fla.1954); Head v. State, 62 So.2d 41 (Fla.1952). If the trial court determines that the state has introduced legally sufficient competent evidence from which a jury could find guilt beyond a reasonable doubt, then a motion for acquittal should be denied since a question of fact now exists for the jury. The Florida Supreme Court in State v. Law, 559 So.2d 187 (Fla. 1989), has explained this process in detail, holding that the state is not required to rebut conclusively every possible variation of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defense's version or theory of events. See Barwick v. State, 660 So.2d 685 (Fla.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 823, 133 L.Ed.2d 766 (1996). If the trial court determines the state has presented legally sufficient evidence which is inconsistent with the defense's version or theory of events, then it becomes the jury's duty to determine whether the circumstantial evidence is inconsistent with any reasonable hypothesis of innocence. Id., 660 So.2d at 694 (Fla.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 823, 133 L.Ed.2d 766 (1996); State v. Law, 559 So.2d 187, 189 (Fla.1989); Heiney v. State, 447 So.2d 210, 212 (Fla.), cert. denied, 469 U.S. 920, 105 S.Ct. 303, 83 L.Ed.2d 237 (1984); Rose v. State, 425 So.2d 521, 523 (Fla.1982), cert. denied, 461 U.S. 909, 103 S.Ct. 1883, 76 L.Ed.2d 812 (1983).
One last comment is warranted regarding the difference between the legal sufficiency of evidence as opposed to the weight given to evidence. The Florida Supreme Court, in Tibbs v. State, 397 So.2d 1120 (Fla. 1981), approved, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), instructed that the former is the appropriate concern of an appellate tribunal and the latter is within the province of the trier of fact:
As a general proposition, an appellate court should not retry a case or reweigh conflicting evidence submitted to a jury or other trier of fact. Rather, the concern on appeal must be whether, after all conflicts in the evidence and all reasonable inferences therefrom have been resolved in favor of the verdict on appeal, there is substantial, competent evidence to support the verdict and judgment. Legal sufficiency alone, as opposed to evidentiary weight, is the appropriate concern of an appellate tribunal. (Footnotes omitted).
Id., 397 So.2d at 1123. Thus, the accepted standard of review on appeal from a conviction on circumstantial evidence is not whether the evidence failed to exclude every reasonable hypothesis save that of guilt, but whether there was substantial, competent evidence for a jury to so conclude and thereby determine that the evidence established guilt beyond a reasonable doubt. Orme v. State, 677 So.2d 258 (Fla.1996); Barwick; Law; Heiney; Rose; Williams v. State, 488 So.2d 62 (Fla.1986); Huggins v. State, 453 So.2d 835 (Fla. 5th DCA), rev. denied, 456 So.2d 1182 (Fla.1984).
Applying these principles, Evans' theory of events seems to be that one of the victim's other homeless acquaintances could have robbed and killed him. In other words, some unidentified person did it. We believe that the state presented sufficient competent evidence inconsistent with Evans' hypothesis of innocence which supports the trial court's *969 denial of Evans' motion for judgment of acquittal.
In the two months preceding the murder, Evans had told an acquaintance that he wanted to steal Morris's truck and sell it in "Carolina," and that he would have to kill Morris to do so. Morris's wallet, containing his calling card, was stolen at the time of the murder. Phone records show that on the same day the victim was discovered, phone calls at 2:51 p.m. and 5:08 p.m., were made to Evans' father's workplace from a Columbia, South Carolina bus station and charged to Morris's calling card. Morris's truck was found in Atlanta across the street from a bus station. Bus record logs showed that a bus left that station and arrived at the Columbia, South Carolina, bus station at 1:15 p.m., less than two hours before the first call was made to Evans' father's workplace with Morris's calling card. Evans' fingerprints were found on a broken glass jar, which had contained money, on Morris's bathroom floor. The positioning of the fingerprints indicated that Evans had handled the jar twice. Bloody mittens were found in the bathroom trash basket which would explain the absence of additional fingerprints. Evans was a regular visitor at Morris's house and was seen at Morris's house one week before the discovery of the body. These facts sufficiently rebutted Evans' hypothesis of innocence to justify the denial of his acquittal motion.

II. EVANS' STATEMENT AT TIME OF ARREST
Sgt. Joe McLemore, a detective for the Lancaster County Sheriff's Office in South Carolina, testified as follows: He was contacted by authorities in Volusia County concerning an individual named "Eddie Edwards" who was known to South Carolina authorities as Jeffrey Evans. A confidential informant led McLemore to Evans. Accompanied by two Volusia County investigators and four other uniformed South Carolina officers, Evans was arrested at the learned location. McLemore and the Volusia County officers were in plain clothes but wore badges that identified them as police officers. The badges were on the Volusia County officers' waists and the officers stood in front of Evans when he was arrested. McLemore arrested Evans, and he testified that he was within earshot and sight of Evans at all times during the arrest. While transporting Evans to Lancaster County's sheriff's office, Evans stated, "I knew I was going to get caught."
On cross examination, McLemore admitted that Evans was placed under arrest for a South Carolina outstanding warrant, and that the warrant was read to him. He further admitted that Evans had not been introduced to the Volusia County officers, and that no one said anything to Evans about being a suspect in a Florida homicide. In short, the only information communicated to Evans prior to his even making his incriminating statement was that he was being arrested on outstanding charges from South Carolina.
In a proffer, McLemore testified Evans was placed under arrest on an outstanding warrant about a year old. McLemore also referred to a past arrest of Evans in which Evans's father had allegedly hid Evans in his home from the officers. This was apparently relayed to show that Evans's father must have told Evans he was a suspect in the Florida homicide, as McLemore had spoken to Evans' father about a week prior to arresting Evans.
We disagree with the trial court that there was sufficient evidence of a nexus between Evans' statement that "I knew I was going to get caught" and the Florida murder. Thus, such evidence was erroneously admitted. See Merritt v. State, 523 So.2d 573 (Fla. 1988). In the Merritt case, a first degree murder defendant escaped while en route to Florida to stand trial on other, unrelated charges. The state was permitted to introduce evidence of the escape at the first-degree murder trial and to have the jury charged on it as an additional circumstance of guilt. The Florida supreme court in reversing and remanding for a new trial, found that it was unreasonable to allow the jury to connect the escape with guilt of first-degree murder, when it was equally as likely that the escape was to evade prosecution for the unrelated charges. Similarly, it was unreasonable in the instant case to allow the jury to connect Evans's statement, "I knew I was going to get caught," with guilt of the Florida *970 murder, when it was equally as likely that the statement was made in relation to the unrelated South Carolina charges. Cf. Anderson v. State, 574 So.2d 87 (Fla.), cert. denied, 502 U.S. 834, 112 S.Ct. 114, 116 L.Ed.2d 83 (1991) (defendant's incriminating statement was properly admitted to show consciousness of guilt where it was obvious as to what the statement related to, i.e., the harming of a prosecution witness). As in Merritt, once the court erroneously admitted the evidence, Evans was placed in a difficult tactical position since in rebuttal to the state's improper implication that Evans made the statement in relation to the Florida murder, defense counsel had to introduce evidence that Evans made the statement while being arrested on an unrelated South Carolina charge. Thus, the defense argues, and we agree, the state was permitted to get the South Carolina charge in through the back door.
We further find, however, that the erroneously admitted evidence was harmless error given the other evidence presented by the state. State v. DiGuilio, 491 So.2d 1129 (Fla.1986). Although the evidence was circumstantial, it placed Evans in the victim's home before the murder with a motive for theft and in possession of the victim's telephone calling card in another state shortly after the murder. Evan's theory that someone else committed the murder was sufficiently rebutted by the state. The state's cross-appeal is rendered moot by our affirmance.
We affirm the conviction.
AFFIRMED.
GOSHORN and GRIFFIN, JJ., concur.