BENTON, Judge.
On direct appeal of her theft conviction, Evelyn Williams contends that the State did not prove its case. Ms. Williams was one of four siblings entitled to equal shares of what was adjudged an intestate estate. Evidence that she transferred money from her mother’s estate to her own account was insufficient to show her guilty of theft, she maintains, where she was the personal representative of the estate and an estate beneficiary. Finding ourselves in agreement that proof merely of the transfers was not enough to withstand the motion for judgment of acquittal made at the close of the State’s case, we reverse.
*42 A personal representative who diverts estate assets which are the property of another to her own use runs afoul of section 812.014(l)(a) and (b), Florida Statutes (1997), which provides:
(1) A person is guilty of theft if he knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
(a) Deprive the other person of a right to the property or a benefit therefrom.
(b) Appropriate the property to his own use or to the use of any person not entitled thereto.
As was pointed out in State v. Lahurd, 632 So.2d 1101 (Fla. 4th DCA 1994), the comprehensive provisions of section 812.014 carry forward the prohibition formerly found in section 812.021(l)(c), Florida Statutes (1975).
“A personal representative is a fiduciary....” § 733.602(1), Fla. Stat. (1997). A personal representative does not have “an unrestricted right to use estate assets as his own.” Lahurd, 632 So.2d at 1103. Former section 812.021(l)(c), Florida Statutes, “expressly provided that executors of estates were guilty of larceny for secreting, withholding or otherwise appropriating to their own use any property in their possession by virtue of their appointment,” Id., which rightfully belonged to another. Such misappropriation is now proscribed by section 812.014(l)(a) and (b), Florida Statutes (1997).
The narrow question here is whether the evidence adduced by the State in its case in chief was enough to survive the motion for judgment of acquittal filed at the close of the State’s evidence. Our supreme court recently reiterated the rule of decision that governs motions for judgment of acquittal:
[Cjourts should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law. [Lynch v. State, 293 So.2d 44, 45 (Fla.1974) ]; see Gudinas v. State, 693 So.2d 953 (Fla.1997), cert. denied, [— U.S. -, 118 S.Ct. 345, 139 L.Ed.2d 267] 66 U.S.L.W. 3297 (U.S. Oct. 20 1997); Barwick v. State, 660 So.2d 685 (Fla.1995); DeAngelo v. State, 616 So.2d 440 (Fla.1993); Taylor v. State, 583 So.2d 323 (Fla.1991). In circumstantial evidence cases, “a judgment of acquittal is appropriate if the State fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt.” Barwick, 660 So.2d at 694. Therefore, at the outset, “the trial judge must first determine there is competent evidence from which the jury could infer guilt to the exclusion of all other inferences.” Barwick, 660 So.2d at 694. After the judge determines, as a matter of law, whether such competent evidence exists, the “question of whether the evidence is [in fact] inconsistent with any other reasonable inference is a question of fact for the jury.” Long v. State, 689 So.2d 1055, 1058 (Fla.1997).
Gordon v. State, 704 So.2d 107, 112-13 (Fla.1997). See also Moore v. State, 537 So.2d 693 (Fla. 1st DCA 1989); Barnett v. State, 444 So.2d 967, 969 (Fla. 1st DCA 1983); Terry v. State, 668 So.2d 954, 964 (Fla.1996).
Our supreme court made clear, in Walker v. State, 604 So.2d 475, 476-77 (Fla.1992), that the only evidence to be looked to on review of the denial of a motion for judgment of acquittal filed at the close of the State’s case is evidence adduced before the State rested:
This Court has ruled that a defendant’s motion for judgment of acquittal at the close of the State’s case is not waived by the defendant’s subsequent introduction of evidence if the motion is renewed at the close of all the evidence. State v. Pennington, 534 So.2d 393 (Fla.1988). Thus, we must decide whether the evidence presented during the State’s case was legally sufficient to support the convictions of kidnapping.
The trial court denied Ms. Williams’ motion for judgment of acquittal at the end of the State’s case in chief, and again when it was renewed at the close of all the evidence. We now reverse on grounds the motion should have been granted at the close of the State’s case.
In its case in chief, the State proved that, after her appointment as personal represen *43 tative, Ms. Williams presented letters of administration to her deceased mother’s bank, closed her deceased mother’s bank account, which contained $13,737.32, and simultaneously opened an estate account in that amount. This account apparently contained all of the estate’s liquid assets. But the decedent died owning other property as well: a lot, a mobile home with an annex, and a variety of tangible personalty, including jewelry and a ear. Evidence as to the value of the other property was not adduced.
The State showed that the funds in the personal account to which most of the money was initially transferred were eventually almost entirely depleted, but did not prove that Ms. Williams was not ultimately entitled to the money. The State also showed that Ms. Williams transferred estate funds into personal accounts, including the account she opened in her own name specifically for the purpose, despite a court order to place the funds into a lawyer’s trust account.
Compliance with the probate court’s order was mandatory, and contumacious defiance of such an order is a crime. But, as the learned trial judge observed, proof of intentional noncompliance with a court order does not itself prove theft. Cf. People v. Page, 116 Cal. 386, 48 P. 326, 329 (1897)(“The fact that [the guardian] did not pay to the insane asylum the $475, ordered to be paid by Judge Levy does not tend to show a misappropriation of that money.”) At one point, the prosecutor argued, “Well, I can’t show exactly where it was spent, but [I can] show that it was not placed in the trust account.” To this, the trial judge responded, “But how is that a theft if [all that is proven was that] she did not place the money into a trust account? How is that a theft?” See generally People v. Grimes, 91 Cal.App.2d 629, 205 P.2d 416, 418 (1949).
By transferring money or other property to which she is not entitled to her own account, a fiduciary has effected an appropriation or “taking.” The prosecution need not establish what use a fiduciary makes of such funds in order to prove a “taking.” In order to prove theft, however, it is incumbent on the State to prove not only that a fiduciary transferred assets to a personal account, but also that in doing so the fiduciary was transferring “the property of another.” § 812.014(1), Fla. Stat. (1997).
In reversing the trial court’s order granting a motion to dismiss theft charges, the Lahurd court necessarily concluded that the stipulated facts “established a prima facie case of guilt against the defendant.” Fla. R.Crim. P. 3.190(e)(4). The stipulated facts in the Lahurd ease were that, in one of three similar transactions, a lawyer serving as a personal representative “transferred in excess of $100,000 from the estate account into his own personal/law firm account, which he then used to invest in real property,” 632 So.2d at 1102, purchased in his own name. It was also stipulated that the lawyer lost to foreclosure all the real estate he bought for himself with estate funds.
The present case differs significantly. * The defendant in Lahurd made the bald *44 claim that a personal representative could never be guilty of theft under section 812.014(l)(a) and (b), Florida Statutes (1991), because the personal representative has a right, albeit as a fiduciary, to take possession of estate property. The Lahurd court naturally rejected this sweeping assertion, as do we. The stipulated facts there did not suggest that Mr. Lahurd was a beneficiary of the estate which was the source of the funds he invested for his personal account or specify that he was otherwise entitled to the money personally.
At the close of the State’s case here, the jury did not know the value of the net estate, or whether Ms. Williams had paid legitimate expenses on behalf of the estate for which she was entitled to be reimbursed. Evidence showed that Ms. Williams was a beneficiary of the estate, entitled to a quarter of the net estate for her own use. Ordinarily, personal representatives in Florida may lawfully reimburse themselves for expenses they have reasonably incurred on behalf of an estate, as well as disburse money to pay the estate’s other just debts. §§ 733.602, 733.603, 733.607, 733.608, 733.612, and 733.617, Fla. Stat. (1997). In these circumstances, the State’s case fell short of “competent evidence from which the jury could infer guilt [of theft] to the exclusion of all other inferences.” Bar-wick v. State, 660 So.2d 685, 694 (Fla.1995). The motion for judgment of acquittal made at the close of the State’s case should have been granted.
Reversed.
BARFIELD, C.J., and KAHN, J., concur.

 The trial judge had, of course, heard none of the evidence adduced in the defense case when he denied the motion for judgment of acquittal at the close of the State’s case. After the State rested, Ms. Williams put on evidence that the initial transfer of estate funds into her personal joint checking account was reimbursement for a down payment she had made with her own money for her mother’s funeral, which she testified cost over four thousand dollars altogether.
Ms. Williams also testified that she used money from estate funds to pay off debts she had incurred in obtaining food, medicine, and clothing for her mother, in maintaining her mother’s car, and in securing child care services she needed while caring for her mother during her final illness (fifty dollars a week for almost seven weeks). She further testified that she spent two thousand dollars of the money on clothing for two of her mother’s grandchildren, one of whom had been dependent on her mother at the time of her death.
We do not suggest that the evidence Ms. Williams adduced in her own case was exonerating. In this connection, see section 733.603, Florida Statutes (1997). Given its verdict, moreover, the jury may not have credited the evidence, although this is unclear: in closing argument, the prosecution again contended it needed to prove only that Ms. Williams “took that money and spent that money [and i]l does not matter on what.” But evidence Ms. Williams put on in her case does suggest why the evidence adduced on the case in chief — the only evidence to which we must look, see Walker v. State, 604 So.2d 475 (Fla.1992); State v. Pennington, 534 So.2d 393 (Fla.1988) — did not prove, as a matter of law, *44 that Ms. Williams was not personally entitled beneficially to property as to which she stands convicted of theft,