W. SHARP, J.
Cortez appeals from an order adjudicating her guilty and placing her on probation for the offense of acquiring or attempting to acquire possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge.[1] She argues that the trial court erred in not directing a verdict in her favor because the prosecution failed to adduce sufficient evidence of her fraudulent intent and knowledge. We affirm.
This was a relatively short trial, in which only two state witnesses testified. Dr. Richard Litsky, an emergency room physician, testified that Cortez was admitted to the emergency room of Central Florida Regional Hospital, complaining of abdominal pain. He treated her and ordered tests. He also directed she take a painkiller, Darvocet, as needed. Since she had that drug on hand at home, he did not give her a prescription. But later, at the request of the emergency room nurse assisting him, he wrote out a prescription for six tablets of Darvocet. The nurse gave the prescription to Cortez.
Some two weeks later, pharmacist Crag-er was given the prescription to fill at Walgreens. It was dropped off by a friend for Cortez, and Crager did not speak with him. Initially, an assistant received the prescription to be filled. In looking at the prescription, Crager thought a zero had been added to the number six. He was familiar with prescriptions from Dr. Lit-sky. He testified Dr. Litsky normally prints the number, and then writes the number in letters in a parenthesis. Here the prescription had the word “six” written next to the number. He called Dr. Litsky and asked whether the prescription was for six or sixty tablets. Dr. Litsky told him it was only for six.
Later, Cortez called Crager to see if the prescription was ready. He asked her if it was for six or sixty pills. She said sixty. Cortez asked if she could send her friend to pick up the medicine, and Crager told her she would have to pick it up herself. He notified the police. After Cortez picked up the prescription, the police arrested her.
Initially, Cortez argues that Crag-er’s statement that she told him the prescription was for sixty pills, not six, should have been excluded because the statement was only disclosed to the defense on the morning of trial. The prosecutor explained the pharmacist only disclosed the statement the day before, to her, and that it had been promptly turned over to the defense,
The court held a Richardson hearing[2] and later reopened the Richardson inquiry. Defense counsel argued it may have been the pharmacy assistant who told Cortez the prescription was for sixty pills. The court gave defense counsel an opportunity to interview the technician, and after doing so, declined to call her as a witness. The court then found the discovery violation was an “unintentional error ... but not a major hazard.” In ascertaining whether prejudice has been caused by a discovery violation in a given case, the trial court has broad discretion. Reese v. State, 694 So.2d 678 (Fla.1997); Peterson v. State, 465 So.2d 1349 (Fla. 5th DCA 1985).
Second, Cortez argues that proof the substance purchased by her was in fact a controlled substance was insufficient. Crager was not qualified as an expert witness, and he had not tested the substance he sold to Cortez. Rather, he relied on the label of the bottle from which he took the pills he sold to Cortez. However, proof of the identity of the controlled substance is not necessary in this case. Cortez was charged with violating section 893.13(7)(a)9, which makes it a crime to “acquire or obtain, or attempt to acquire *1146 or obtain, possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge.” The charge of attempt does not require proof the substance involved is actually a controlled substance. See Louissaint v. State, 576 So.2d 316 (Fla. 5th DCA 1990).
Third, Cortez argues that her motion for judgment of acquittal should have been granted because the evidence against her was purely circumstantial, and failed to exclude a reasonable hypothesis of innocence: namely, that she did not change the prescription and that she did not know it had been changed. The crime of attempting to acquire a controlled substance by forgery is not a strict liability crime and it does require proof of fraudulent intent on the part of the defendant. Mercer v. State, 656 So.2d 555 (Fla. 1st DCA 1995); Mariano v. State, 615 So.2d 264 (Fla. 4th DCA 1993).
The proof of this issue was indeed circumstantial. The prescription traveled from Dr. Litsky to his emergency room nurse, to Cortez. And then, two weeks later, to Cortez’s friend, to the pharmacy assistant, to Crager. By the time it reached Crager, it had been altered or “forged” by someone. But the writing on the prescription was identified as Dr. Lib-sky’s and that of his emergency room nurse, who added the date and Cortez’s name in a different color of ink. That left only the pharmacy assistant and Cortez’s friend, neither of whom had a motive to alter the number of pills. Further, if they had altered the prescription, then how did Cortez know about it when she called Crager? No reasonable hypothesis for Cortez’s lack of knowledge or participation in the forgery was presented in this case. In our view, this is the kind of case which should have gone to the jury, which was properly instructed on circumstantial evidence.[3]
Although not argued by defense counsel at trial or on appeal, the jury instructions on the forgery offense were incomplete. The court gave the Standard Jury Instruction.
Before you can find the defendant guilty of acquiring a controlled substances [sic] by misrepresentation, fraud, forgery, deception, or subterfuge, the State must prove the following three elements beyond a reasonable doubt.
The first element, Marylou Cortez acquired or obtained or attempted to acquire or obtain possession of a certain substance.
Second, the substance was dextropro-poxyphene.
Third, Marylou Cortez acquired or obtained or attempted to acquire or obtain the substance by misrepresentation, fraud, forgery, deception, or subterfuge.
In Mercer, the judge gave the same jury instructions in a similar ease. The defense in that case did not object to the instructions, but the appellate court held the giving of the instructions, in that case, was fundamental error. It pointed out that the defendant in that case made a good faith defense, and the prosecutor in closing argument pointed out that the definition of the crime, as well as the later instructions given by the court, permitted no good faith defense. The prosecutor argued that simply seeking to fill and purchase a controlled substance with a forged prescription was sufficient to convict, even if the defendant did not alter the prescription and/or did not know it had been forged. The appellate court held:
The failure herein to charge the jury that the state had to prove intent and knowledge on the part of appellant relieved the state of its burden of proving the essential elements of the charged offense, deprived appellant of her sole theory of defense, and may have result *1147 ed in an impermissible conviction for a non-existent crime.
Mercer, 656 So.2d at 556.
However, in this case, the prosecution and the defense both argued to the jury that an essential element the state had to prove was that Cortez knew the original prescription was for six, not sixty pills, and that she knew and intended to get sixty. It did not really matter who changed the number, but only that Cortez knew of the change. The defense further argued the circumstantial evidence had to be consistent with guilt and inconsistent with every reasonable hypothesis of innocence. Although the jury instructions did not make those essential elements clear, thus it did instruct Cortez had to be found to have acquired or attempted to acquire the drugs by misrepresentation, fraud, forgery, deception or subterfuge. And the circumstantial evidence instruction — that the circumstance had to be consistent with guilt and inconsistent with every reasonable hypothesis of innocence — was clearly addressed to the jury’s ultimate conclusion that Cortez either altered her prescription, or knew when she sought to have it filled that it had been altered. Thus, we decline to find fundamental error in this case.
AFFIRMED.
COBB and HARRIS, JJ., concur.

. §§ 893.13(7)(a)9, 893.13(7)(c) and 893.03(4)(o), Fla. Stat.

. Richardson v. State, 246 So.2d 771 (Fla. 1971).

. Delgado v. State, - So.2d -, 2000 WL 1205960 (Fla.2000); Benedith v. State, 717 So.2d 472 (Fla. 1998); Atwater v. State, 626 So.2d 1325 (Fla.1993), cert. denied, 511 U.S. 1046, 114 S.Ct. 1578. 128 L.Ed.2d 221 (1994); Nelson v. State, 725 So.2d 412 (Fla. 5th DCA), rev. denied, 733 So.2d 516 (Fla. 1999); Evans v. State, 692 So.2d 966 (Fla. 5th DCA 1997).