GRIFFIN, J.
Antonio Marice Devoe [“Devoe”] was charged with one count of sale of cocaine and one count of possession of cocaine less than twenty-eight grams. He was found guilty at his second jury trial and was placed on probation for two years on each count to run concurrently. He contends on appeal that a new trial should have been granted based on newly discovered evidence and the prosecutor’s improper bolstering of a police officer and mischar-acterization of the evidence during closing argument. We find no merit in the latter but write to address the claim of newly discovered evidence.
On July 28, 1998, at approximately 5:30 p.m., Deputy Linda Murray [“Murray”] of the Brevard County Sheriffs Office was working undercover making crack cocaine buys. While driving on Lake Circle, she approached three black males in a front yard and asked them for a twenty.[1] One black male, from a distance of about twenty-five feet away, approached the officer, as individuals down the street shouted, “That’s the police, that’s a cop.” The man who approached asked her if she was a cop, and Murray said that she was not. The man, who was wearing a button-down plaid shirt, pulled it over his head, and walked to the car with one hand holding up the shirt and the other holding a piece of crack cocaine. Murray asked if she could have a bigger rock and the man said no. The man took the money and walked away, pulling his shirt back down. Murray stated that before this man had put his shirt over his head, she was able to look at his face, as the conditions were bright and clear, but after he pulled the shirt over his head, his face was completely obstructed. She spoke with him for thirty to forty-five seconds while he was in close proximity to her. A video camera located inside the vehicle only recorded the man’s covered face.
Murray testified that upon pulling up to the location where the three black males were standing, she radioed in a description. She described the man as a black male about 5' 7", wearing black shorts, black high top tennis shoes, boxer shorts showing above the top of his black shorts, a plaid multicolored shirt, and a very large gold necklace with a charm similar to either an anchor or cross.
Murray communicated this transaction to Deputy Shawn Shaouni [“Shaouni”], who was on patrol in the area, and gave *993 him the address of the residence as well as a physical description of the man. Deputy Shaouni made contact with Devoe at another location about one-tenth of a mile from where Murray made the buy. Shaouni confirmed the description with Murray over the radio. Shaouni approached Devoe, asking if he could speak with him. Devoe agreed and gave the deputy his military I.D. Shaouni viewed the video at a later time and was able to identify the clothes the man was wearing in the video as the same clothes that De-voe was wearing. Also, Devoe was wearing a large gold cross.
Murray went to the precinct and, twenty to thirty minutes later, was provided with a photograph of Devoe. After looking at the photograph for a second or two, she identified Devoe as the man who sold her the cocaine.
After Devoe was found guilty at trial, a motion for new trial was filed on May 17, 1999. A motion for new trial based on newly discovered evidence was filed on August 18,1999. The second motion alleges that after the jury trial, Dedric Jackson [“Jackson”] came forward and identified himself as the suspect who sold crack cocaine to the undercover officer.
Jackson testified at the hearing on this motion. Jackson said that on July 28, 1999, he was on Lake Circle with a few friends. He did not remember if Devoe was present. He said a white lady approached him in a dark blue truck and asked for a twenty piece of crack, which he gave to her. He said that people were yelling out that it was the police, so he covered his head up with his shirt.
Jackson said he was unaware that Devoe went to trial on the sale of cocaine charge and only found out slightly before the time Devoe was released from jail. Jackson said he would need to see the video to ascertain if it was the same incident where he sold crack to a woman. When asked about whether he had a shirt similar to the one Devoe was wearing, he commented that he had not seen the video and therefore did not know.
Jackson testified that he and Devoe had grown up together, were neighbors, very good friends and saw each other almost everyday. Jackson said he came forward because he does not want Devoe to go to jail for something that he did. He said that his mother and Devoe’s grandmother are good friends that go to church together. When asked if he was merely taking the blame for his friend, Jackson replied, “no, I don’t think so.”
Cross-examination revealed that Jackson did not know the actual date of the incident nor the time of year, only verifying that it was in 1998. He also could not recall the appearance of the woman who bought the crack. Jackson said he believed that the sun was going down when the incident occurred and it was most likely evening. This was the only incident where he sold cocaine and covered up his face.
The trial judge denied the motion. She observed that Jackson and Devoe, although both dark-skinned black males with similar facial hair, looked very different from each other. She agreed that while the evidence may possibly have changed the verdict, the standard of whether it would have changed the verdict had not been met.
The test for determining whether to grant a new trial based on newly discovered evidence requires a finding that the evidence was unknown and could not have been known at the time of trial through due diligence. See Robinson v. State, 770 So.2d 1167 (Fla.2000) (citing Jones v. State, 591 So.2d 911, 916 (Fla.1991) (Jones I)); Murrah v. State, 773 So.2d 622 (Fla. 1st DCA 2000). Once past this threshold finding, a court must apply the second prong, which requires a finding that the newly discovered evidence would probably produce an acquittal on retrial. Robinson, 770 So.2d at 1170; Murrah, 773 So.2d at 623. The Robinson court, citing to Jones *994 v. State, 709 So.2d 512 (Fla.1998) (Jones II), explained that in reaching the conclusion as to the probable acquittal on retrial:
[T]he trial court is required to “consider . all newly discovered evidence which would be admissible” at'trial and then evaluate the “weight of both the newly discovered evidence and the evidence which was introduced at trial.” [Jones I, 591 So.2d at 916].
In considering the second prong, the trial court should initially consider whether the evidence would have been admissible at trial or whether ’ there would have been any evidentiary bars to its admissibility. Once this is determined, an evaluation of the weight to be accorded the evidence includes whether the evidence goes to the merits of the case or whether it constitutes impeachment evidence. The trial court should also determine whether the evidence is cumulative to other evidence in the case. The trial court should further consider the materiality and relevance of the evidence and any inconsistencies in the newly discovered evidence.
Robinson, 770 So.2d 1167. (Emphasis omitted.)
The trial court did not abuse its discretion in denying the motion for new trial. First, Devoe did not show why this evidence was unknown and could not have been discovered through due diligence. De-voe was very good friends with Jackson. Why Devoe or his family members did not recognize Jackson’s body shape or voice in the tape is unexplained. See Rolon v. State, 745 So.2d 442 (Fla. 5th DCA 1999).
There also was no showing that the new evidence probably would have produced an acquittal on retrial. Jackson professed not to know for sure if he was the person who sold the crack, although the events as described to him resembled a drug deal in which he had participated. Although he had executed an affidavit which specified the date on which the transaction occurred, he admitted that he could not even be sure of the month, let alone the day. He did not write or dictate the affidavit. He could not remember what he was wearing during the alleged transaction, whether Devoe was with him, or what the undercover officer looked like. He admitted he was good friends with Devoe and their family members are friends as well. Further, Jackson’s account regarding the manner in which he concealed his face was inconsistent with the videotape of the transaction.[2] See Woods v. State, 738 So.2d 980 (Fla.1999).
AFFIRMED.
COBB and ORFINGER, R.B., JJ., concur.

. A twenty is a twentieth gram of crack cocaine that sells for $20.

. Q And how did you cover up your face?
A My shirt.
Q And could you describe how you did it with your shirt?
A Pulled [it] up over my face (indicating) so she couldn't see my face.
Q Meaning did you take the bottom of your shirt and pull it up this way (indicating)? Or did you take your shirt as you've now demonstrated and pull it up from your collar up to your face? If you recall, sir.
A Maybe I did that like. I don’t know. I don’t know. All I know is I covered my face up.