PER CURIAM.
The State appeals the trial court’s order granting Ceasar Robinson’s motion for post-conviction relief, filed pursuant to Florida Rule of Criminal Procedure 3.850, based on newly discovered evidence. We reverse, concluding that the trial court abused its discretion in granting postconviction relief where the evidence was not likely to produce an acquittal on retrial.
In the early morning hours of December 5, 1981, Avil Francis was shot to death while sleeping at a residence in Winter Haven, Florida. His newlywed wife, Bernadette Francis, was shot in the head, but survived the shooting. The residence was the former marital abode of Ms. Francis and Robinson, who were divorced five months prior to the shootings. At a trial in August 1982, the jury found Robinson guilty of the first-degree murder of Mr. Francis and the attempted first-degree murder of Ms. Francis. The trial court sentenced Robinson to life in prison with a minimum of twenty-five years, plus a consecutive prison term of twenty years with a three-year minimum.[1]
Approximately fourteen years later, in July 1996, Robinson filed a motion for post-conviction relief asserting newly discovered evidence. Robinson alleged that Ms. Francis and her daughter lied at his trial concerning their eyewitness accounts of the shooting. In support of his motion, he filed the affidavit of a fellow inmate, Wilbert Hollins, who purportedly obtained such information during a conversation with Ms. Francis in New York, in 1989. Robinson claimed that he learned of this information only a few months prior to filing his 1996 motion for postconvietion relief.
In response to Robinson’s motion, the State agreed to an evidentiary hearing. Following the evidentiary hearing, the trial court granted postconviction relief by written order in May 1997.
A. 1982 Trial
At the 1982 trial, Ms. Francis testified that she, Mr. Francis, and her daughter, Shantel, went to bed together on the night of December 4, 1981. Shantel was sleeping at Ms. Francis’s feet. During the early morning hours, Ms. Francis awoke with a numb feeling in her hand. She testified that she saw Robinson standing by the bed. Robinson said: ‘You thought you all have gotten away, but I got both of you all.” Robinson then left the house. Ms. Francis then realized that she had been shot and her husband, Mr. Francis, had been killed.
Shantel testified that she saw Robinson come into the room and shoot both her mother and her stepfather. She described what Robinson was wearing, although her testimony conflicted with her previous statement to the police.
Ms. Francis’s and Shantel’s eyewitness accounts were the only direct evidence presented against Robinson at the 1982 trial. However, the State presented an abundance of circumstantial evidence against Robinson, including: (1) Robinson’s purchase of a .38 caliber gun and bullets one month prior to the shootings; which was the same caliber as that used in the shootings; (2) Robinson’s fingerprint that was discovered on a light bulb that had been unscrewed from the porch light outside of the residence where the shootings took place; (3) a witness’s testimony that, prior to the shootings, Robinson had told him that he caught Ms. Francis and Mr. Francis in bed together and could have killed them if he wanted to; (4) the fact that Robinson, at one time, had a key to the front door of the residence where the shootings took place, and the door showed no signs of *621 forced entry on the night of the shootings, despite being locked; (5) the fact that the shootings took place five months after Robinson and Ms. Francis were divorced, two months after Mr. Francis and Ms. Francis were married, and a mere two days after Mr. Francis arrived in Florida and began residing with his newlywed wife in the former marital abode of Robinson and Ms. Francis; (6) the fact that nothing was stolen from the residence on the night of the shootings; and (7) the fact that the shooter did not harm Shantel, who was sleeping in the same bed with the victims.
Robinson denied that he was responsible for the shootings. He presented an alibi defense which indicated that he was 250 miles away, in Monticello, Florida, at the time of the shootings. However, the witnesses offered by the defense to corroborate Robinson’s alibi, could not pinpoint Robinson’s whereabouts between 6:00 p.m., Friday, December 4, 1981, and daybreak, Saturday, December 5,1981.
B. 1997 Hearing on the Motion for Postconviction Relief
Wilbert Hollins (Hollins), a forty-four-year-old inmate at the Avon Park Correctional Institution, was the key witness for Robinson at the 1997 hearing on the motion for posteonviction relief. Hollins was serving a life sentence at the time of the .hearing.
Hollins testified to the following alleged facts. He met the victim, Avil Francis, in Winter Park, Florida in 1974 or 1975. He and Mr. Francis became friends and would visit one another at each other’s homes. Hollins met Bernadette Francis, whom he knew as Bernadette James, through his relationship with Mr. Francis. Between 1977 and 1978, he saw Bernadette six or seven times at either his house or Avil’s house.
In 1989, while Hollins was out of prison on bond, he had a chance encounter with Bernadette Francis in New York. Hollins was passing through Brooklyn, New York, looking for some relatives, when he encountered Ms. Francis sitting on the porch steps of a house in the Brownsville neighborhood. Although he had not seen Bernadette in over ten years, he immediately recognized her; and she recognized him.
According to Mr. Hollins, Ms. Francis informed him of Avil’s death and shared some details. Ms. Francis allegedly told him that on the night of the shootings, she did not actually see or talk to Robinson, but knew that he was the person who shot them because she took his life savings and gave it to Avil. Ms. Francis also informed him that she told her daughter, Shantel, to lie and say she witnessed the shootings. That was the last time Hollins saw Ms. Francis prior to the 1997 court proceeding.
In another chance encounter, Hollins said he met Robinson at the Avon Park Correctional Institution in 1996 and inquired if Robinson knew Bernadette Francis. Hollins claimed that he remembered Ceasar Robinson’s name from the discussion he had with Ms. Francis seven years earlier in New York.
Ms. Francis also testified. She denied knowing Hollins, and denied ever having any conversations with him. She testified that she knew Avil Francis for only one year prior to their marriage on October 31, 1981. Further, while she did move to Brooklyn, New York, after the shootings, Ms. Francis testified that she did not live in or near the Brownsville area, and knew no one in that area. Ms. Francis said she never told her - daughter to lie, and that they both told the truth at the 1982 trial.
Robinson, who was seventy-nine years old at the 1997 hearing, testified briefly to meeting Hollins at the Avon Park Correctional Institution in 1996. According to Robinson, Hollins stated that he learned of Robinson’s case from Ms. Francis. Robinson said that he never made any promises to Hollins.
In granting postconviction relief, the trial court found that Hollins’ testimony constituted newly discovered evidence and could have affected the outcome of this case. The trial court stated:
The state’s case was entirely circumstantial absent the testimony of Bernadette Francis and Shantel Francis. At the trial, Ms. Francis testified that the defendant was standing next to her bed, yet she could not identify what the defendant was wearing, nor the type of weapon he was hold *622 ing. She farther testified that she did not see a gun, nor did she hear any shots fired, yet she told Deputy Dobson that she heard shots and saw the gun.
On the other hand Shantel Francis could positively identify what the defendant was wearing that night, and the number of shots that were fired. Deputy Dobson testified that Shantel Francis was initially unable to recount the events that occurred that night. In one specific instance, Shan-tel Francis stated that she “did not hear any shots, nor did she know anything about what the shooting occurred.” (sic) Yet she was able to provide the police with a detailed interview the following day. We do not know what contact Shantel Francis had between the initial interview and the subsequent interview with her mother.
Hollins’ affidavit and testimony were clearly not for any pecuniary gain. At the hearing, no motive for lying or for fabricating the story was shown. He described the meeting with Ms. Francis in detail. While many of the things could have been learned from the defendant, his quality of detail was impressive. Hollins also testified that he is serving two consecutive life sentences. He stated that he would be willing to testify at a new trial.
In any event, the testimony relating to Ms. Francis lacks the necessary indicia of reliability. First, Ms. Francis’ statements to police were not consistent with her testimony at trial. Most important, at the evidentiary hearing, Ms. Francis testified that she had never traveled to Miami with Avil Francis. Yet, at trial, Shirley Eth-ridge testified that the Francis’s told her that they were going to a wedding in Miami.
In light of Hollins’ testimony as well as the inconsistencies of Ms. Francis testimony at trial and at the evidentiary hearing, the Court finds that the newly discovered evidence could probably produce an acquittal on retrial.
C. Newly Discovered Evidence
In Jones v. State, 709 So.2d 512 (Fla.1998), the Florida Supreme Court recently addressed the two-prong test for determining whether a conviction should be set aside on the basis of newly discovered evidence. The court stated:
First, in order to be considered newly discovered, the evidence “must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of it] by the use of diligence.” Torres-Arboleda v. Dugger, 636 So.2d 1321, 1324-25 (Fla.1994).
Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial. To reach this conclusion the trial court is required to “consider all newly discovered evidence which would be admissible” at trial and then evaluáte the “weight of both the newly discovered evidence and the evidence which was introduced at the trial.”
Jones, 709 So.2d at 521 (citations omitted).
Applying the first prong of the test to the facts of this case, it is clear that Hollins’ testimony constitutes newly discovered evidence. Hollins’ testimony was unknown at the time of trial, and neither Robinson, nor his counsel, could have known of it by the use of diligence.
Turning to the second prong of the test, we initially note that Hollins’ testimony would be admissible on retrial as impeachment evidence under section 90.608, Florida Statutes (1997). However, the very nature of this evidence, as impeachment evidence, highlights the ultimate question of whether the newly discovered evidence would probably produce an acquittal on retrial. See Jones, 709 So.2d at 521. Because the newly discovered evidence is nothing more than impeachment evidence, it does not provide a defense to Robinson, but merely serves to refute Ms. Francis’s and Shantel’s eyewitness accounts of the shootings.
Historically, newly discovered evidence in the form of impeachment evidence was considered insufficient as a matter of law to warrant a new trial. See Douth v. State, 85 So.2d 550, 551 (Fla.1956) (“We have held that evidence having a mere tendency to impeach is insufficient to justify the granting of a new trial on the ground of newly discovered evi *623 dence . . . .”); see also King v. Harrington, 411 So.2d 912, 915 (Fla. 2d DCA 1982) (“Under Florida law, a motion for new trial based on newly discovered evidence will not be granted unless the evidence ... is material, and is not merely cumulative or impeaching.”); Wright v. State, 223 So.2d 112, 115 (Fla. 3d DCA 1969) (“Evidence having a mere tendency to impeach a witness is insufficient to justify the granting of a new trial.”).
Recently, however, this rule on impeachment evidence has been expanded. Florida courts now are willing to consider newly discovered “impeachment” evidence as sufficient to grant a new trial in certain limited circumstances. In Jones, the supreme court stated: “[A]n evaluation of the weight to be accorded the [newly discovered] evidence includes whether the evidence goes to the merits of the case or whether it constitutes impeachment evidence.” 709 So.2d at 521; see also McDonald v. Pickens, 544 So.2d 261 (Fla. 1st DCA 1989) (“[T]here may be cases where newly discovered evidence may warrant a new trial notwithstanding that the evidence goes only to the impeachment of a witness.”). Thus, the trial court, in this case, was required to balance the weight of Hollins’ impeachment testimony against all of the other evidence stacked against Robinson in making its determination.
Upon review of the record, it initially appears that the trial court was within its discretion when it found that the impeachment evidence would counterbalance the testimony of Ms. Francis and Shantel on retrial. However, the trial court’s order fails to account for the abundant circumstantial evidence that was presented against Robinson at the 1982 trial. In light of this strong circumstantial evidence, we find it less likely that the jury would reject Ms. Francis’s and Shantel’s eyewitness accounts on retrial. Moreover, it is important to remember that Hollins’ character, as a convicted felon, was itself susceptible to impeachment. See Perry v. State, 395 So.2d 170, 173 (Fla.1980).
While we recognize that a motion for new trial based on newly discovered evidence is addressed to the sound discretion of the trial court, see Clark v. State, 379 So.2d 97, 101 (Fla.1979), we are compelled to hold that the trial court has abused its discretion in this case. The circumstantial evidence, coupled with the testimony of Ms. Francis and Shantel, so clearly outweighs the newly discovered, impeachment evidence that no reasonable person would have reached the conclusion that the trial court did. Therefore, the trial court abused its discretion in determining that Hollins’ testimony would probably produce an acquittal on retrial. Accordingly, we reverse the order granting postconvietion relief and remand for further proceedings consistent with this opinion.
Reversed and remanded for further proceedings.
PARKER, C.J., and WHATLEY and GREEN, JJ., concur.

. This court affirmed the judgments and sentences in Case No. 82-2333. See Robinson v. State, 436 So.2d 112 (Fla. 2d DCA 1983).