# Third District Court of Appeal

## State of Florida

Opinion filed February 5, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-1152
Lower Tribunal No. F21-17004A
_____

**The State of Florida,**
Appellant/Cross-Appellee,

vs.

**Kevin Perez,**
Appellee/Cross-Appellant.

An Appeal from the Circuit Court for Miami-Dade County, Alberto Milian, Judge.

John Guard, Acting Attorney General, and Kayla Heather McNab, Assistant Attorney General, for appellant/cross-appellee.

Buschel Gibbons, P.A., and Robert C. Buschel (Fort Lauderdale), for appellee/cross-appellant.

Before EMAS, FERNANDEZ and BOKOR, JJ.

PER CURIAM.

The State of Florida ("the State") appeals the trial court's order granting a motion for new trial. Defendant Kevin Perez ("Perez") cross-appeals the denial of his motion for judgment of acquittal. On direct appeal, we reverse the part of the trial court's order granting Perez's motion for new trial. On cross-appeal, we affirm the part of the order denying Perez's motion for judgment of acquittal.

**<u>FACTS AND PROCEDURAL HISTORY</u>**

Perez, a Miami Beach police officer, was charged by information with one count of felony battery pursuant to section 784.041 and 777.011,[1] Florida Statutes (2021). The arrest stems from a beating of a tourist, Dalonta Crudup ("Crudup"), during Crudup's arrest in a hotel lobby on South Beach. During the pendency of the case, the defense filed a motion for statement of particulars pursuant to Florida Rule of Criminal Procedure 3.140(n)[2],which the trial court granted. The statement of particulars provided:

---

[1] § 777.011 – Principal in the first degree.
[2] Florida Rule of Crime Procedure 3.140(n) provides:

> The court, on motion, shall order the prosecuting attorney to furnish a statement of particulars when the indictment or information on which the defendant is to be tried fails to inform the defendant of the particulars of the offense sufficiently to enable the defendant to prepare a defense. The statement of particulars shall specify as definitely as possible the place, date,

Kevin Perez ("the defendant") and Jose D. Perez ("the co-defendant") did unlawfully and feloniously commit battery upon Dalonta Crudup ("the victim") The defendant actually and intentionally kicked the victim in the head and/or neck and/or upper body area while the victim laid on the ground. Next, the defendant picked the victim up off the ground and intentionally slammed the victim back into the ground. After the victim is slammed into the ground, Blood appears on the floor below the victim's head. The defendant then struck the victim in the head with his hand. Finally, the defendant held the victim on the ground while the co-defendant kicked the victim in the face and/or head multiple times.

Perez's jury trial began on February 28, 2023. The State's first witness was Miami Beach Police Lieutenant Jose Reina. Lieutenant Reina testified that on July 26, 2021, he and Miami Beach Police Detective Edward Holbrook responded to the Royal Palm Hotel on South Beach after a BOLO was sent out about a black male on a scooter who had fled from two police officers pursuant to a traffic stop. The BOLO reported that the individual had hit a police officer on a bicycle and almost hit another officer. The BOLO further identified the individual as a black male, skinny, tall, dreadlocks, wearing jeans, and on a motor scooter.

---

and all other material facts of the crime charged that are specifically requested and are known to the prosecuting attorney, including the names of persons intended to be defrauded. Reasonable doubts concerning the construction of this rule shall be resolved in favor of the defendant.")

3

When Lieutenant Reina arrived at the area, he saw Crudup, who was driving a scooter. He matched the description of the BOLO. The officers who were driving in unmarked cars activated their emergency lights and sirens, but Crudup did not stop driving the scooter. He looked back at the officers, jumped onto the sidewalk with his scooter, then ran into the Royal Palm Hotel, leaving the scooter on the sidewalk.

Lieutenant Reina got out of his car and identified himself as a police officer, as he was not in uniform. Crudup continued to flee on foot into the hotel. Crudup ran into the elevator, but Lieutenant Reina stopped him at gunpoint and ordered him out of the elevator. Crudup hesitated for a second, then came out of the elevator within seconds. Lieutenant Reina ordered Crudup onto the ground. Crudup hesitated but complied and got on the ground on his stomach. Lieutenant Reina told him to place his hands behind his back and Crudup, who initially had his hands spread out, complied. Lieutenant Reina then radioed that he had Crudup at gunpoint and requested units to come to the lobby area. Lieutenant Reina's partner, Detective Holbrook then arrived, and right after him, the other officers arrived.

At that point, multiple officers started trying to handcuff Crudup. Lieutenant Reina believed that ten or more officers tried to take Crudup into custody. Crudup was eventually handcuffed. Lieutenant Reina testified he

4

saw Perez's co-defendant, Sergeant Jose Perez, kick Crudup. The video of the closed-circuit TV of the Royal Palm lobby, taken during the event, was published to the jury after it was introduced into evidence.

Crudup testified next. He was arrested by Miami Beach police on the night in question and was subsequently charged with the felony offense of fleeing or eluding an officer and the misdemeanor offense of reckless driving. Those charges were still pending against Crudup at the time of Perez's trial And he testified that after his Miami-Dade County arrest, he was arrested in Washington, D. C. and Kentucky. Crudup acknowledged that those cases also remained pending. Crudup testified that pursuant to the subpoena in this case, his testimony at trial could not be used against him. However, the subpoena did not give Crudup complete (i.e., transactional) immunity for his case in Miami-Dade County; rather, Crudup was granted use and derivative use immunity for his testimony in Perez's trial.[3]

---

[3] See, e.g., Mordenti v. State, 894 So. 2d 161, 177 (Fla. 2004) ("Use immunity forbids testimony to be used against the witness in any criminal prosecution of the witness. Transactional immunity provides complete immunity from prosecution for the matter concerning which the testimony was elicited. Transactional immunity extends further, therefore, because it not only immunizes the witness for any use of his or her testimony or its fruits in a subsequent trial, but it also provides absolute immunity against future prosecution for the offense to which the question relates."). See also § 914.04, Fla. Stat. (2023) ("No person who has been duly served with a subpoena or subpoena duces tecum shall be excused from attending and testifying or producing any book, paper, or other document before any court

5

Crudup testified that in July 2021, he was on vacation in Miami with his ex-girlfriend, his mother, his sister, and his sister's girlfriend. He testified that he was at the intersection of 9th Street and Collins Avenue with cousins and friends when three police officers on bicycles came to the area. Crudup was on a scooter. The officers told everyone in the group that they needed to move their cars. The officers did not tell Crudup to move his scooter. The people that owned or rented the cars then moved their cars.

Crudup testified that one of the officers had a flashlight on his bicycle and that it was shining in Crudup's eyes. Crudup asked if the officer could turn down the light. The officer then pushed his bicycle closer to Crudup and shined the light in his eyes. Crudup walked back to the sidewalk and finished talking to his cousin. Crudup then walked to his scooter, sat on the scooter, and put in his headphones before kicking back the kickstands to drive back to his hotel.

having felony trial jurisdiction, grand jury, or state attorney upon investigation, proceeding, or trial for a violation of any of the criminal statutes of this state upon the ground or for the reason that the testimony or evidence, documentary or otherwise, required of the person may tend to convict him or her of a crime or to subject him or her to a penalty or forfeiture, but no testimony so given or evidence so produced shall be received against the person upon any criminal investigation or proceeding. Such testimony or evidence, however, may be received against the person upon any criminal investigation or proceeding for perjury committed while giving such testimony or producing such evidence or for any perjury subsequently committed.")

Crudup testified that he spent about five to ten minutes sitting on his scooter before he drove off. During that time, none of the officers approached him or said anything to him. After he started the scooter to leave, Crudup pushed the brakes, which caused him and the scooter to fall. Crudup used his hand to catch his fall. Neither his head, face, nor shoulder touched the ground. Crudup saw the officers laughing. Crudup said, "F*** you" to the officers and gave the officers the middle finger. He then got back up on his scooter and drove off.

Crudup stated he drove down an alley as he headed back to the hotel, and an officer on a bicycle came into the alley. The officer never gave Crudup a hand gesture to try and stop him, so Crudup passed him. When Crudup came out of the alley, three other officers were on his right. An officer on Crudup's left tried to throw his bicycle at Crudup. Crudup went around him and continued driving; he did not hit the officer. The State introduced video footage of the encounter.

Crudup testified that as he continued down the alley, he got the feeling that the officers wanted him to stop. He stated that he did not stop because he was "scared for his life." He wanted to drive to the hotel to see his mother. He testified that his mother worked with prosecutors and officers in Washington, D.C., so he thought she could de-escalate the situation. As he

7

continued driving to the hotel, a truck tried to run Crudup off the road. The truck did not have any police markings or anything to indicate that it was a police car. Crudup hopped the curb and continued to drive the scooter on the sidewalk. Once at the hotel, he dropped the scooter and ran into the hotel.

Crudup then ran to the elevator to try to go to the hotel room to get to his mother. An officer then entered the elevator and pointed his gun at Crudup. The officer ordered Crudup to come out of the elevator, which Crudup did. The officer then told him to get down on the ground and put his hands behind his back, which Crudup did. Crudup stated he complied because he was scared the officer would shoot him. The officer then put his knee on Crudup's back, grabbed his wrists, twisted them, and slapped handcuffs on one of his hands. Defense counsel did not object to this testimony. More officers then arrived. Crudup testified the officers came in with "[s]miles on their faces, like coming in, abusing." The officers then beat Crudup. Crudup stated:

> Every officer that came in that room constantly punched, kicked, punched, kicked, and laughed, giggled. Like they were helping one another out.

> One officer would pull me, another officer would say, "Stop resisting arrest."

> Another officer would pull, another officer would hit, saying "He's resisting arrest."

8

Crudup testified that he was lying on the ground, getting "abused." Officers had their knees on Crudup's neck, back, and arm. Officers were pulling him in different directions. Officers were kicking, punching, and hitting him while he was handcuffed. Crudup was kicked and punched in his ribs, face, arm, and legs. An officer then picked Crudup up by the back of his arms and slammed him onto the ground. Crudup hit the ground with his face. After he was slammed to the ground, the officers continued to kick and hit him. Crudup testified he was choking on his blood. Crudup could not tell which officers were hitting and kicking him because he was face down on the ground, and his shirt was in his face. Crudup denied pulling away from the officers and stated he complied with their commands and did not move because he could not. When asked if officers were putting pressure on his body, Crudup replied, "Yeah, with their knees." Defense counsel did not object.

Before the officers took Crudup out of the hotel, they stripped him of his pants. At that point, he saw blood all over the ground. His face and his mouth were hurting a lot.

The State then played the CCTV video from the Royal Palm Hotel lobby and questioned Crudup while pausing the video at different points. The

9

State introduced the body-worn camera video from Officer Santana Lopez, Officer Melendez, and Perez showing what happened when Crudup was in the hotel lobby.

Crudup stated he was taken to the hospital in a police cruiser and treated. As a result of the incident, Crudup has a scar on his left shoulder/left chest and a scar on his chin. Crudup was allowed to stand up and show the judge and the jury the scar on his chin.

Crudup testified he had no agreement with the Miami-Dade State Attorney's Office whereby the case against him for fleeing the police and hitting the officer with his scooter would be dismissed if he testified in the State's case against Perez. He testified he was being charged with fleeing and eluding officers, assault and battery, reckless driving, and criminal mischief. He further agreed on cross-examination that although he had use and derivative use immunity for his testimony in the case against Perez, that immunity did not extend to his cases in Washington, D.C. and in Kentucky. On cross-examination he again stated that the officers were "putting their knees and punching me and stuff." Crudup was asked again on re-direct if there had been any agreement to dismiss or give him a favorable plea offer in the Miami-Dade County case against him in exchange for his testimony against Perez, and Crudup replied, "No, sir." He was also asked again on re-

direct if there were any knees on his back or body, to which Crudup replied, "There was knees in the back of my neck and knees in my back." There were no objections to this testimony.

Next, Dr. Ramin Vejdani testified that he is an osteopathic physician specializing in emergency medicine at Mount Sinai Medical Center. He testified he treated Crudup on the date in question. Crudup had a laceration on his chin that required six stitches. He also had superficial abrasions on his right shoulder, face, and chest. Crudup complained of some right-side chest wall and rib pain, so he ordered a chest x-ray to make sure there were no fractures or broken bones. The chest x-ray did not show any broken bones or other injuries. Dr. Vejdani testified that Crudup did not have any serious bodily injury.

Miami Beach Police Officer Christopher Garrido testified next. He stated he was working as a bicycle patrol officer on July 26, 2021. Officer Garrido attempted to stop Crudup by extending his hand and ordered him to stop, but he realized Crudup was not going to stop. Officer Garrido then angled his bicycle giving Crudup enough room to go around him, but Crudup crashed right into Officer Garrido and then continued driving away. Officer Garrido was hit on his leg by the front part of the motor scooter, and he fell to the ground. Officer Garrido got back up and followed Crudup to the Royal

11

Palm Hotel. When he arrived, Lieutenant Reina and Detective Holbrook had Crudup on the ground at gunpoint. They did not have handcuffs with them, so Officer Garrido attempted to handcuff Crudup. As he was trying to handcuff Crudup, he was bumped by the other officers that began to arrive on the scene. It took him several seconds, but he was able to handcuff both of Crudup's wrists. Officer Garrido stated he was kneeling above Crudup while he was handcuffing him.

Crudup was charged as a result of the injuries that he caused to Officer Garrido. Officer Garrido testified that the State Attorney's Office contacted him several times to ask if he would be interested in reducing the charges against Crudup from a felony to a misdemeanor. Officer Garrido repeatedly told them no.

Miami Beach Police Sergeant Andy Descalzo testified next. He is a Sergeant in the internal affairs unit and investigated the incident that took place at the Royal Palms Hotel. He reviewed the CCTV and body cam videos of the incident but was not present on the day of the incident. He identified Perez and his co-defendant Sergeant Jose Perez in the videos, as well as other officers. He identified Perez as the person who slammed Crudup to the ground.

Miami Beach Police Sergeant Jamil Acevedo testified next. He was on

12

patrol with Perez on July 26, 2021. They were both in uniform. Sergeant Acevedo and Perez responded to the report of Crudup fleeing on a scooter. When they arrived at the Royal Palm Hotel, multiple officers were already there. Sergeant Acevedo tried to hold Crudup down so he could be handcuffed. He was holding Crudup's head down and his upper back down. Once he believed that Crudup had been handcuffed, he stood up. Crudup was not resisting at the time. Sergeant Acevedo stated Perez tried to pick Crudup up by Crudup's arms. He stated that as Perez was trying to pick Crudup off the floor, Crudup's shirt ripped, and Perez and Crudup fell to the floor. At some point, Sergeant Acevedo saw blood on the floor. After he disengaged, Sergeant Acevedo saw Perez strike Crudup on the head. At that point, Sergeant Acevedo stated he did not recall whether Crudup was resisting arrest. After having his memory refreshed, Officer Acevedo stated that when Perez kicked Crudup, Crudup was not resisting arrest.

Next, Officer Brandon Campos, a City of Miami Beach Officer, testified. He was working on the bicycle response team on July 26, 2021. He responded to officers trying to stop Crudup when he was riding his scooter through the alley. He saw Crudup hit Officer Garrido with his scooter. When he arrived at the hotel, Crudup was already on the ground. He stated there

13

were more than ten officers already present and more arrived after. Officer Campos also tried to assist in handcuffing Crudup. After Crudup was handcuffed, Officer Campos saw a shoe flying by. He could not say for sure whether it was a kick but that it could be a kicking motion. Officer Campos eventually learned that the person that kicked was Perez. On cross-examination, Officer Campos was asked if anyone put their knee on Crudup's neck, to which the officer replied, "To my knowledge, no." The State then asked him on re-cross if he knew whether another officer put his knee on Crudup's neck, to which he replied, "I do not know." Defense objected, and the trial court sustained the objection.

At that point, there was a sidebar where the trial court stated there had been no testimony of anyone putting their knee in Crudup's back. The State told the court that Crudup himself testified a few times that someone put their knee on his neck. The State was trying to describe what was taking place on the scene and what happened that day. The trial court stated it never remembered Crudup saying someone placed a knee to the back of his neck. Defense counsel argued it was prejudicial because it was referencing "another case in Minnesota." Defense asked for a curative instruction that there was no evidence that any officer put their knee on Crudup's neck. The State agreed that a curative instruction saying Perez didn't do it was one

14

thing but did not agree that "any officer" did not put their knee on Crudup's neck. The trial court eventually told the jury that the objection was sustained and to disregard the question that was asked. The trial court stated he would address the defense's motion for a curative instruction the next day.

Khalid Lo Vaughn testified next. Vaughn saw officers hit, punch, and kick Crudup. He testified that it seemed to him Crudup was handcuffed because he had his hands behind his back. Crudup did not flail his arms or kick the officers. While he was watching, Vaughn addressed the officers because he felt the need to help.

The State then rested. The defense moved for judgment of acquittal. They argued that the State failed to prove that Kevin Perez acted as a principal to the battery committed by co-defendant, Jose Perez. The defense also argued that the State failed to prove that Perez caused the laceration to Crudup to prove felony battery. The State argued that it presented the testimony of Sergeant Descalzo identifying Perez in the CCTV as the person who kicked Crudup and the person in the video who slammed Crudup to the ground. The State argued that Crudup testified he was picked up and slammed to the ground and kicked. The State presented Perez's own body-worn cam video showing him punching Crudup in the back of the head after he slammed him to the ground. The State presented video evidence showing

15

after Perez slammed Crudup to the ground as he remained on top of him, Co-defendant Sergeant Jose Perez kicked Crudup in the face. Both Perez and co-defendant Jose Perez were identified on the body-worn camera videos and the CCTV video. The State argued that pursuant to Guthrie v. State, 407 So. 2d 357 (Fla. 5th DCA 1981), there was sufficient evidence to send the issue to the jury regarding whether there was great bodily harm to Crudup. As to the principal theory the State argued that the video showing Perez as the person sitting on top of Crudup holding him down as co-defendant Jose Perez kicked him in the face twice, was sufficient evidence from which the jury may hold Perez responsible for the actions of co-defendant Jose Perez. The trial court then stated it was "going to direct a verdict down to simple battery in this case." Thus, the charge against Perez was reduced to a misdemeanor battery.

The defense called Officer Alvaro Leon to testify. He testified that when he arrived on the scene in the hotel lobby, he tried to take Crudup into custody. Crudup resisted, so Officer Leon delivered distractionary strikes to get him to comply.

Next, Officer Alfredo Garcia was called to testify. He stated that when he arrived at the scene in the hotel lobby, Crudup was not in custody. He assisted in handcuffing him. Crudup was resisting arrest, so Officer Garcia

16

delivered a closed-fist strike to Crudup's back. He did not recall how many times he struck Crudup. He stopped because there were many officers on the scene, and he did not believe his efforts to deliver any more force would be effective.

Perez voluntarily chose not to testify. The defense rested and renewed its motion for judgment of acquittal. The court stated it was reserving ruling on the motion "until we have a jury verdict."

Before closing arguments, the defense requested that the trial court give a curative instruction regarding the issue of placing a knee on Crudup's neck. The trial court charged the jury before closing arguments and stated, "[T]he State of Florida . . . did not charge the defendant with placing a knee on Dalonta Crudup's back. There was mention of that during the course of the trial. You are to ignore that."

The State proceeded with its closing argument. During closing, the prosecutor stated, "as he lays on the floor, complying with police commands, he starts getting pressure on his back. Knees in his back. Knees on his leg." Defense counsel objected, and the trial court sustained the objection. The court told the jury to disregard the argument. Defense counsel called for sidebar and requested a mistrial. The prosecutor argued that the trial court's instruction was knees to the neck but that Crudup testified there were knees

17

on his back. The court stated it would not declare a mistrial and would give another curative instruction, which it did.

On March 8, 2023, the jury found Perez guilty of one count of misdemeanor battery. On March 17, 2023, Perez filed a post-trial motion for judgment of acquittal and motion for new trial. Perez argued that there was no evidence that he assisted co-defendant Jose Perez in any battery; that the State did not prove that Perez acted outside the course and scope of his duty because the force used by Perez was lawful and reasonable under the circumstances; that the court should grant a new trial based upon the weight of the evidence; and that the State intentionally engaged in improper closing argument to "goad" the defense into requesting a mistrial and that the trial court should grant the /mistrial with jeopardy attaching and prohibiting a new trial. The State filed its response on May 8, 2023.

On May 10, 2023, the trial court held a hearing on Perez's motion for new trial and motion for judgment of acquittal. Defense counsel advised the court it had discovered that, after the conclusion of the trial, the State announced a nolle pross of the Miami-Dade County charges against Crudup. Defense counsel contended this was an undisclosed "quid pro quo" and that Crudup received the benefit of having his pending charges dismissed in exchange for his testimony at Perez's trial. In response, the State argued

18

that the prosecutors in Perez's case had no communication with the prosecutors in Crudup's case. The prosecutor stated that her understanding was that the aggravated battery charges were never filed against Crudup for the injury to Officer Garrido's leg. The prosecutor stated she was told by a prosecutor in her unit that the charges against Crudup were nolle prossed, but she had nothing to do with the case involving the charges against Crudup. The prosecutor explained that a chief assistant made the decision to drop the charges after evaluating the case based on a motion to dismiss that had been filed, as well as reviewing some of the transcripts of the trial that were available at the time. The prosecutor offered to bring in the prosecutor who handled the case against Crudup, but the trial court declined the offer. The prosecutor argued that this case was not a single witness case with no video, thus the fact that Crudup got this benefit would not have changed the jury's verdict. In this case, there was a body-worn cam video, CCTV video, and the officers' testimonies, all corroborating Crudup's testimony.

Defense counsel also argued that allowing the State in closing argument to refer to the George Floyd incident was prejudicial to defendant. Counsel argued that the trial court gave the instruction to the jury before closing argument so the State knew what the jury instruction was. The State

argued that the defense theory was that Crudup was moving and resisting and pulling away, thus giving the officers the opportunity to use force that they thought was necessary to contain Crudup. Crudup testified he had knees on his back and neck three times. That testimony went directly to the fact that Crudup could not move, thus rebutting the moving around theory. Showing there were knees on his back, arms, and neck indicates the officers were holding him down and pulling him left and right and went directly to rebutting the defense that there was a justifiable use of force. There was nothing brought up about George Floyd, and Floyd's name was never mentioned. The trial court stated he needed more time before giving his ruling to the parties so he could do some research.

At a hearing before the trial court on May 26, 2023, the trial court granted the motion for new trial finding that the alleged quid pro quo agreement was newly discovered evidence. The court stated:

> For the reasons stated in the Motion to Grant a New Trial, I'm going to grant a new trial for Mr. Perez because I think that the prosecution did not come with clean hands to this particular case.

> I am a personal friend of Ms. Rundle, I have a lot of respect for her. I don't know if she had anything to do with this but to me, that's irrelevant. I think the weight of the evidence in this case indicates that if the jury had known about Mr. Crudup's benefit, the outcome would've been very different in the case.

20

So, the Motion for New Trial is hereby granted. That means that Mr. Perez will be tried, and we'll just have to set a new trial date for that case. I'm not going to grant a Judgment of Acquittal, but I will grant the Motion for New Trial.

On May 30, 2023, Perez filed a post-trial motion to compel <u>Brady</u> and <u>Giglio</u> evidence. Perez contended that the State should be ordered to provide all exculpatory and impeachment evidence related to the outcome of Crudup's criminal case. On June 7, 2023, the trial court entered its written order granting Perez's motion for new trial and denying the motion for judgment of acquittal. The State now appeals from this ruling, and Perez cross-appeals.

An order granting a new trial is generally reviewed for an abuse of discretion. <u>State v. Newman</u>, 104 So. 3d 1180, 1181 (Fla. 2012). A stronger showing is required when reviewing an order granting a new trial than when reviewing an order denying a new trial. <u>Valenty v. Saraiva</u>, 292 So. 3d, 50 54 (Fla 2d. DCA 2020).

<u>Direct appeal: The trial court erred in granting a new trial.</u>

The State argues that the trial court erred in granting Perez's motion for new trial when the trial court found that the alleged quid pro quo agreement between Crudup and the State was newly discovered evidence. We agree.

21

To obtain a new trial, the newly discovered evidence must be of sucha nature that it would probably produce an acquittal on retrial. Melendez v. State, 718 So. 2d 746, 747 (Fla. 1998). Florida Rule of Criminal Procedure 3.600 states that "the court shall grant a new trial only if: new and material evidence, which, if introduced at the trial would probably have changed the verdict or finding of the court, and which the defendant could not with reasonable diligence have discovered and produced at trial, has been discovered." Thus, the Florida Supreme Court in Jones v. State, 709 So. 2d 512, 521 (Fla. 1998), held that two requirements must be met for a conviction to be set aside based on newly discovered evidence. First, the Court stated that "in order to be considered newly discovered evidence, the evidence must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of it] by the use of diligence.'" Id. "Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial." Id. In making this assessment, "the trial court is required to 'consider all newly discovered evidence which would be admissible' at trial and then evaluate the 'weight of both the newly discovered evidence and the evidence which was introduced at the trial.'" Id. The Jones Court further stated, "Once this is determined, an evaluation of the weight to be accorded

22

the evidence includes whether the evidence goes to the merits of the case or whether it constitutes impeachment evidence." <u>Id.</u>

The trial court stated in its order on appeal that if the jury would have been aware of Crudup's agreement with the State, "it is likely the outcome of the trial would have been different." However, as the State correctly asserts, there is no record support that during trial and when Crudup was giving his testimony, there was an agreement between him and the State by which Crudup would give testimony against Perez in exchange for the State dropping the charges against Crudup in the related criminal case. The prosecutor went into detail regarding how the State Attorney's Office decided to drop the charges against Crudup. The trial court agreed with Perez and his argument about how that decision came about, but there was no proof in the record to support Perez's argument. <u>See</u> <u>Young v. State</u>, 140 So. 2d 97, 100 (Fla. 1962) (finding that allegations in a motion for a new trial must be supported by proof).

Here, the proof in the record supports the State's explanation. Crudup testified at trial that he had an open criminal case in Miami-Dade County from his arrest on July 26, 2021. The arrest was related to the incident that Perez was being tried for. Crudup was granted partial immunity for his testimony. Crudup testified the case was still pending against him at the time of trial. He

23

further testified when asked various times that there was no agreement between him and the State to dismiss the case against him if he testified against Perez. Defense counsel had the opportunity  to cross-examine Crudup about his motive for testifying against Perez. Thus, there was  no proof in the record of a quid pro quo agreement that was in place during trial. Generally, impeachment evidence does not justify a new trial. Douth v.State, 85 So. 2d 550, 551 (Fla. 1956) ("[E]vidence having a mere  tendency to impeach is insufficient to justify the granting of a new trial on the ground of newly discovered evidence      [T]he new evidence must go to the merits and be material."). If there was a *quid pro quo* agreement, the agreement was not related to the merits of the case. The agreement was only related to Crudup's credibility. However, it is true that Florida has expanded this rule and will "consider newly discovered 'impeachment' evidence as sufficient to grant a new trial in certain limited circumstances." State v. Robinson, 711 So. 2d 619, 623 (Fla. 2d DCA 1998). The trial court must balance the weight of the impeachment testimony against all of the other evidence "stacked against [defendant] in making its determination." Id.

Here, even if Crudup had not testified against Perez, the jury would not have reached a different result. The State presented sufficient evidence to convict Perez of simple battery. To prove the crime of misdemeanor battery,

24

the State had to prove that Perez actually and intentionally touched or struck Crudup against his will. See Khianthalat v. State, 974 So. 2d 359, 361 (Fla. 2008); § 784.03(1)(a)1., Fla. Stat. (2021). The State presented witness testimony from various officers and Vaughn that Perez battered Crudup. The testimony was corroborated by CCTV video footage from the hotel lobby, as well as video from officers' body cameras. Video footage showed Perez kicking Crudup while he was on the floor of the hotel lobby. This was after Crudup was handcuffed. The video footage also showed Perez lifted Crudup from the ground by his handcuffs and dropped Crudup on his chin. Sergeant Descalzo identified Perez during his testimony while the CCTV video was played for the jury. Sergeant Descalzo also identified Perez on Perez's body worn camera footage that showed Perez punching Crudup in the back of the head after he dropped Crudup while Crudup was handcuffed. Accordingly, the weight of the evidence against Perez presented by the State to support the battery conviction outweighed the newly discovered impeachment evidence. Thus, the State is correct that the trial court erred in granting the motion for a new trial based on the alleged newly discovered evidence. Robinson, 711 So. 2d at 623 (reversing granting of motion for new trial because the trial court failed "to account for the abundant [ ] evidence that was presented at . . . trial"); Sloan v. State, 427 So. 2d 808, 809 (Fla. 4th

DCA 1983) (finding limitation on cross-examination regarding pending charges against witness was harmless given the substantial evidence against defendant).

**Cross-appeal: The trial court did not err in denying Perez's motion for judgment of acquittal based on the State's closing argument.**

On cross-appeal, Perez argues that his motion for judgment of acquittal should have been granted because the State improperly referenced the George Floyd case in its closing argument. However, the record does not support Perez's position.

"The purpose of closing argument is to help the jury understand the issues by applying the evidence to the law applicable in the case." Hill v. State, 515 So. 2d 176, 178 (Fla. 1987). Attorneys should be afforded great latitude in their closing arguments; however, they must "confine their arguments to the facts and evidence presented to the jury and all logical deductions from the facts and evidence." Knoizen v. Bruegger, 713 So. 2d 1071, 1072 (Fla. 5th DCA 1998). Closing arguments are considered improper if they "inflame the minds and passions of the jurors so that their verdict reflects an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law." Bertolotti v. State, 476 So. 2d 130, 134 (Fla. 1985).

During Perez's trial, which took place in February and March of 2023, the State never mentioned or referred to the May 2020 George Floyd case, his name, his image, or anything related to his death, including during closing argument, as Perez contends. Nor did the prosecutor draw an analogy between Perez's case and the George Floyd case at any time during the prosecutor's closing argument.

What the State did mention during its closing argument were the facts based on the evidence that had been admitted at trial. During closing, the prosecutor made the following statement, "As [Crudup] lays on the floor, complying with police commands, he starts getting pressure on his back. Knees in his back. Knees on his leg." Defense counsel objected, and the trial court sustained the objection. The court told the jury to disregard the argument. Defense counsel called for sidebar and requested a mistrial. The prosecutor argued that the trial court's instruction was knees to the neck, but that Crudup testified there were knees on his back. The court stated it would not declare a mistrial and would give another curative instruction to the jury, which it did.

The record indicates that Crudup testified various times during the trial that he was not able to move because there were knees on his back, neck, and arm and that officers were pulling his arms. Defense counsel never

27

objected. During one of the sidebars the parties had with the trial court during Officer Campos's testimony[4], the court stated that Crudup never testified that knees had been placed on his back, neck, or arms when the police officers were on a pile on top of him while they were trying to handcuff him. The prosecutor tried to tell the court that the court's recollection was not accurate because Crudup testified various times that someone put their knee on his neck, but the trial court disagreed. The court's recollection was, in fact, wrong, as the record reflects that Crudup testified more than once that he could not move because the officers' knees were on his body while they were trying to handcuff him.

The State never filed an answer brief to Perez's cross-appeal. However, at the May 10, 2023, hearing on Perez's motion for new trial and for motion for judgment of acquittal, the State contended that the reason it had elicited that testimony from Crudup was to rebut the defense theory that Perez's use

[4] In its May 8, 2023, written Response to Defendant's motion for Judgment of Acquittal Notwithstanding the Jury Verdict and Defendant's Motion for New Trial, with respect to this issue, the State further explained that during Officer Campos's testimony, it asked Officer Campos if he had placed his knee on Crudup's neck or back, and the defense never objected. On cross-examination, Officer Campos was asked if anyone put their knee on Crudup's neck, to which the officer replied, "To my knowledge, no." The State then asked him on re-cross if he knew whether another officer put his knee on Crudup's neck, to which he replied, "I do not know." Defense objected, and the trial court sustained the objection. Then the sidebar with the trial court occurred, where defense counsel argued it was prejudicial because it was referencing "another case in Minnesota."

of force was justified. It argued that the defense theory was that Crudup was moving and resisting and pulling away, thus giving the officers the opportunity to use force that the officers thought was necessary to contain Crudup. Crudup testified five times he had knees on his back, neck, and/or arm, and the defense never objected. Thus, the trial court allowed the testimony. The prosecutor argued that showing there were knees on Crudup's back, arms, and neck indicated the officers were holding him down and pulling him left and right, which went directly to rebutting the defense that Crudup was moving around and that there was a justifiable use of force. "The proper procedure to take when objectionable comments are made is to object and request a curative instruction [so that the trial court can instruct] the jury to disregard the remarks." Duest v. State, 462 So. 2d 446, 448 (Fla. 1985). Florida courts have held that denial of a mistrial and the issuance of curative instructions are sufficient to remedy prejudice. See Walker v. State, 707 So. 2d 300, 313 (Fla. 1997). Here, Perez initially never objected to any of the testimony Crudup gave regarding having a knee on his body, neck, back, or arm. When the defense finally did object, the trial court gave a curative instruction twice.[5]

---

[5] In addition, Officer Acevedo testified that he was holding Crudup's head down and the upper back area, and the defense never objected to this testimony.

Accordingly, the statement regarding the knees on Crudup's back and leg was highly relevant because it was Crudup's testimony regarding what was happening to him during the incident. It was not elicited to evoke sympathy or an emotional response by the jury. The testimony was brought out to help the jury understand the events taking place and to rebut the defense theory; thus, it was directly relevant to the facts of the case. As such, the trial court did not abuse its discretion in denying Perez's motion for judgment of acquittal. In addition, if there was an error, there was no effect on the jury because the State presented ample evidence to convict Perez of simple battery, including the officers' body-worn camera video, CCTV video of the hotel lobby, Vaughn's testimony, the officers' testimony, and Crudup's testimony. See Stein v. State, 49 Fla. L. Weekly S235a (Fla. Sept. 19, 2024) (holding that defendant's newly discovered evidence claim failed because it would not "probably yield a less severe sentence," and "the State's case was strong and unrebutted").

For these reasons, we reverse in part the trial court's June 7, 2023 order granting Perez's motion for new trial. We affirm, in part, that same order as to the trial court's denial of Perez's motion for judgment of acquittal.

Reversed in part; affirmed in part.